**William LINK, Plaintiff-Appellant,**

v.

**The WABASH RAILROAD COMPANY,
a corporation, Defendant-
Appellee.**

**No. 11681.**

United States Court of Appeals
Seventh Circuit.

Oct. 10, 1956.

Rehearing Denied Nov. 1, 1956.

Jay E. Darlington, Hammond, Ind.,
Malcolm E. Anderson, Chesterton, Ind.,
for appellant.

George T. Schilling, LaFayette, Ind.,
Stuart, Devol, Branigin & Ricks, Lafay-
ette, Ind., of counsel, for appellee.

Before FINNEGAN and SCHNACK-
ENBERG, Circuit Judges, and WHAM,
District Judge.

SCHNACKENBERG, Circuit Judge.

Plaintiff sued defendant in the district
court to recover damages for injuries
alleged to have been sustained by him
when he drove an automobile into a col-
lision with defendant's train standing
across a highway in Indiana. Defendant
answered and later filed a motion for
judgment on the pleadings and to dis-
miss the case.

The district court entered an order in
favor of the defendant in accordance
with its motion, from which order this
appeal is taken.

The pertinent parts of the complaint, which were denied by defendant's answer, are as follows:

" * * * there was a grade crossing where defendant's railroad crossed a north and south highway, designated by the state as Indiana Highway 149, * * *. This highway 149 was covered with black top. The crossing was unlighted and was not protected by gates, flasher lights or any other mechanical warning device of the defendant, except a cross arm, to warn travelers on the highway of the presence of a train approaching or standing on the crossing.

"Defendant's coal car, hereinafter described, with which plaintiff's truck collided, was then and there under the control of defendant's train crew, who had placed it in the position where the collision occurred, and this train crew in so doing were then and there acting in the course of their employment as defendant's employees.

"On October 30, 1953, at about 3 A.M., plaintiff was returning home from work, driving his 1937 Ford half-ton truck. He turned off U.S. 20 and started south on said highway 149 toward said railroad crossing which was a short distance to the south. His truck collided with one of defendant's cars standing on this crossing. This collision was a direct and proximate result of defendant's negligence * * * in the following respects:

"(a) Defendant had created a situation at this crossing at that particular time which in fact made the crossing extra hazardous at that time by giving a false and deceptive appearance of safety, which was likely to and did deceive and entrap an approaching motorist of [sic] using ordinary care [sic] such as plaintiff. More particularly: It was a dark night. This was a two-lane black top highway. It had recently been covered with a fresh coating of blacktop. Defendant placed a black coal car across this highway at this crossing so that the color of the black car blended with the black highway. At one side of the crossing, defendant had placed several cars of lighter color. These were clear of the highway but close to the coal car. These lighter cars were visible to plaintiff by his headlights as he approached the crossing, but this coal car was not. These lighter cars, in conjunction with the black coal car across the black highway created a false appearance and illusion to an approaching motorist in plaintiff's situation that the crossing was open and that the defendant had placed a string of cars to one side of the crossing so as to leave it open for travel. This deception in this situation that night was also aided and increased by the fact that the defendant had frequently placed such light colored cars at one side of the crossing in a similar manner on preceding nights so as to leave the crossing open for travel. The appearance of the crossing that night to motorists frequently using it, such as plaintiff, was similar to that on previous nights when it had been open. In this situation which in fact existed at this crossing that night, a person using ordinary care in the position of defendant's train crew would have known that motorists using ordinary care such as plaintiff were in danger of being deceived and entrapped into colliding with this coal car, and would have used care to prevent this deceptive situation, either by not placing this particular black car in this position relative to the highway and relative to the lighter cars, or by placing some kind of temporary warning at the crossing by means of a light or crew member, or any other means sufficient to warn the motorist of this hidden danger confronting him. This train crew then and there knew, or in the exercise of ordinary care should have known, all the facts

above set forth in this paragraph, but nevertheless they neglected and failed to do anything to warn the plaintiff of this particular peril that night. As plaintiff approached this crossing that night, he had his truck equipped with good and adequate headlights and brakes, he was alert and keeping a look-out and was using ordinary care for his own safety. But nevertheless, by reason of the aforesaid stituation and said negligence of the defendant, he was caused to collide with this coal car."

Plaintiff makes no contention that, in entering the order from which this appeal is taken, any rule of practice was violated. His counsel in oral argument specifically waived that contention. Both parties rely upon the substantive law of Indiana. Plaintiff contends that that state's more recent cases have shown an increasingly liberal and sensible attitude in leaving to juries the question of whether the respective conduct of a railroad's employees and a motorist measures up in fact to the conduct of an ordinarily prudent person under circumstances like those in the particular situation where the accident occurs. This contention defendant disputes. It argues that the only negligence charged in the complaint is a failure to warn of the presence of the railroad car with which plaintiff's car collided. In asking us to affirm the order of the district court, it says that the questions decided by the district court "*as matters of law*"[1] and now presented to this court are these:

"Does the complaint allege sufficient facts to impose on defendant a legal duty to give plaintiff such warning? If so, was such alleged failure the proximate cause of the collision? Was plaintiff guilty of contributory negligence?"

The complaint makes no charge of a violation of statutory duty by the defendant. It is based upon a charge of common law negligence.

In New York Central R. R. Co. v. Casey, 1938, 214 Ind. 464, at page 469, 14 N.E.2d 714, 716 the court said:

"In the absence of a statute, negligence must be founded upon a violation of the duty to exercise that degree of care for the safety of others that an ordinarily reasonable person would exercise under the same or similar circumstances. Where the facts are in dispute, or where more than one reasonable inference may be drawn from the facts, negligence is to be determined as a fact by the jury, but where the facts are not in dispute, and only one reasonable inference may be drawn, negligence is a pure question of law."

In the same case, at page 469 of 214 Ind., at page 717 of 14 N.E.2d, after citing Pennsylvania Railroad Co. v. Huss, 1932, 96 Ind.App. 71, 78, 180 N.E. 919, 921; Cleveland C. C. & St. L. Ry. Co. v. Gillespie, 1931, 96 Ind.App. 535, 173 N.E. 708; and Morley v. Cleveland C. C. & St. L. R. R. Co., 1935, 100 Ind.App. 515, 194 N.E. 806, the court said:

"It is pointed out in those cases that neither the statute nor the common law requires a railroad company to give notice by signal or otherwise that one of its trains is standing upon or moving over a highway crossing unless ordinary care for the safety of others would require it."

The complaint charges in effect that defendant created a temporarily and peculiarly hazardous condition when, on a dark night, it stopped its train with a black coal car across the black top highway. It is the theory of plaintiff that the collision resulted from that condition and the alleged failure of defendant's employees to warn plaintiff. Moving trains are more easily seen at night than those which are stationary. Carmichael v. Baltimore & O. R. Co., 1951, 121 Ind.App. 463, at page 471, 98 N.E.2d 698. The creation by the defendant itself of this

---

1. Emphasis supplied.

hazardous condition at the crossing is a special circumstance unlike any involved in the Indiana cases cited. However, the Indiana court in Louisville & N. R. Co. v. Revlett, 1946, 224 Ind. 313, at page 322, 65 N.E.2d 731, 734, considered a case arising under the law of Kentucky and stated:

"Under the law of Kentucky a person who drives into the side of a train standing or moving over a grade crossing cannot, in the absence of special circumstances rendering the crossing peculiarly hazardous, recover from the railroad company. Chesapeake & O. Ry. Co. v. Switzer, 1938, 275 Ky. 834, 122 S.W.2d 967, 968.

"In the last mentioned case the court quoted with approval the following language from Jones v. Atchison, T. & S. F. Railway, 1929, 129 Kan. 314, 282 P. 593:

" 'Under ordinary circumstances, a freight train standing across a highway on a dark and foggy night will sufficiently reveal itself to travelers exercising due care in the operation of auto vehicles which are equipped with proper lights and which are driven at a proper rate of speed under the conditions. * * *'

"It will be noted that the case of Chesapeake & O. Ry. Co. v. Switzer, supra, excepts from the rule therein laid down crossings where special circumstances renders [sic] the same peculiarly hazardous. * * *"

The court then cited Louisville & N. R. Co. v. Mahoney, 1927, 220 Ky. 30, 294 S.W. 777, and said that, in that case,

" * * * it was dark and raining and there was a sharp curve in the highway very near to the crossing, so it was well-nigh impossible for one approaching the same to see a train until almost reaching the track. The court held under these circumstances, a driver who is well acquainted with the crossing and its surroundings and of the gong and wig-wag there situated, was entitled to a warning signal where the cross-

ing is obstructed by a train, the same as is required to be given by the trainmen of an approaching train."

From these authorities, we deduce that a reasonable inference might be drawn by a jury, from the facts alleged in the complaint, to the effect that the defendant's placing of the black coal car across the highway on a dark night was the creation of special circumstances rendering the crossing peculiarly and temporarily hazardous, and that this conduct, together with defendant's failure to warn plaintiff, constituted negligence proximately causing the collision. It is true that more than one reasonable inference might be drawn from these facts. In that situation the question of negligence should have been determined as a fact upon a trial. Of course, we express no opinion as to which inference should be drawn.

In the absence of an Indiana case directly applicable to the special circumstances set up in the complaint here, we are also justified in citing Pokora v. Wabash Ry. Co., 1934, 292 U.S. 98, 54 S.Ct. 580, 78 L.Ed. 1149, which involved a crossing accident in Springfield, Illinois. In that case, a directed verdict for the defendant railway company was granted. From the Supreme Court's opinion it appears that plaintiff stopped his truck and listened when he was about 10 or 15 feet east of a switch track. A string of box cars standing on the switch track about 5 to 10 feet from the street upon which he was traveling, cut off his view of the tracks to the north. There was neither bell nor whistle. Still listening, he crossed the switch track, and, reaching the main track, was struck by a passenger train coming from the north. Plaintiff was making his crossing in the daytime. The court said, 292 U.S. at page 101, 54 S.Ct. at page 581:

" * * * A jury, but not the court, might say that with faculties thus limited, he should have found some other means of assuring himself of safety before venturing to cross. * * * Indeed, the statu-

tory signals did not exhaust the defendant's duty when to its knowledge there was special danger to the traveler through obstructions on the roadbed narrowing the field of vision. * * * All this the plaintiff, like any other reasonable traveler, might fairly take into account. All this must be taken into account by us in comparing what he did with the conduct reasonably to be expected of reasonable men."

In reversing and remanding the case, the court in 292 U.S. at page 105, 54 S. Ct. at page 583, used this significant language:

"* * * Extraordinary situations may not wisely or fairly be subjected to tests or regulations that are fitting for the common place or normal. In default of the guide of customary conduct, what is suitable for the traveler caught in a mesh where the ordinary safeguards fail him is for the judgment of a jury."

Accordingly, the judgment of the district court is reversed and the case is remanded for trial.

Reversed and remanded.