# LINK v. WABASH RAILROAD CO.

No. 422.   Argued April 3, 1962.—Decided June 25, 1962.

*Jay E. Darlington* argued the cause and filed briefs for petitioner.

*John F. Bodle* argued the cause for respondent. With him on the briefs were *Roger D. Branigin* and *George T. Schilling*.

MR. JUSTICE HARLAN delivered the opinion of the Court.

Petitioner challenges, from the standpoint of both power and discretion, the District Court's *sua sponte* dismissal of this diversity negligence action under circumstances that follow.

The action, growing out of a collision between petitioner's automobile and one of respondent's trains, was commenced on August 24, 1954. Some six years later, and more than three years after petitioner had finally prevailed on respondent's motion for judgment on the pleadings (during which time two fixed trial dates had been postponed),[1] the District Court, on September 29, 1960, duly notified counsel for each side of the scheduling of a pretrial conference to be held at the courthouse in Hammond, Indiana, on October 12, 1960, at 1 p. m. During the preceding morning, October 11, petitioner's counsel telephoned respondent's lawyer from Indianapolis, stating that "he was doing some work on some papers," that he expected to be at the pretrial conference, but that he might not attend the taking of a deposition of the plaintiff scheduled for the same day. At about 10:45 on the morning of October 12 petitioner's counsel telephoned the

---

[1] See note 2, *infra*.

628

Hammond courthouse from Indianapolis (about 160 miles away), and after asking for the judge, who then was on the bench, requested the judge's secretary to convey to him this message: "that he [counsel] was busy preparing papers to file with the [Indiana] Supreme Court," that "he wasn't actually engaged in argument and that he couldn't be here by 1:00 o'clock, but he would be here either Thursday afternoon [October 13] or any time Friday [October 14] if it [the pretrial conference] could be reset."

When petitioner's counsel did not appear at the pretrial conference the District Court, after reviewing the history of the case [2] and finding that counsel had failed

---

[2] A history of the litigation appears in the opinion of the Court of Appeals:

"On August 24, 1954, plaintiff William Link filed his complaint in the district court against defendant The Wabash Railroad Company to recover damages for injuries alleged to have been sustained by him when he drove an automobile into a collision with defendant's train standing across a highway in Indiana.

"On September 17, 1954, defendant appeared and filed its answer to the complaint.

"On April 30, 1955, defendant filed its motion for judgment on the pleadings. On October 18, 1955, hearing was had on this motion. On November 30, 1955, the district court granted defendant's motion for judgment on the pleadings and ordered the cause dismissed. From this order of dismissal plaintiff appealed. On October 10, 1956, our court reversed and remanded the case for trial. . . . 237 F. 2d 1, certiorari denied 352 U. S. 1003 . . . (February 25, 1957). On March 13, 1957, the mandate from this court was filed in the district court.

"Subsequently, the trial court set the case for trial for July 17, 1957. On June 27, 1957, on motion of plaintiff and defendant not objecting, the trial date of July 17, 1957 was vacated; and the cause was continued.

"On August 17, 1957, defendant filed interrogatories for plaintiff to answer. [*Footnote 2 continued on p. 629*]

"to indicate . . . a reasonable reason" for his nonappearance, dismissed the action "for failure of the plaintiff's counsel to appear at the pretrial, for failure to prosecute this action." The court, acting two hours after the appointed hour for the conference, stated that the dismissal was in the "exercise [of] its inherent power." The Court of Appeals affirmed by a divided vote. 291 F. 2d 542. We granted certiorari. 368 U. S. 918.

## I.

The authority of a federal trial court to dismiss a plaintiff's action with prejudice because of his failure to prosecute cannot seriously be doubted.[3] The power to invoke this sanction is necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion

---

"On February 24, 1959, the trial court on its own initiative gave notice to the parties, pursuant to Local Rule 11 [footnote omitted], that the cause would be dismissed on March 25, 1959, unless the court ordered otherwise.

"On March 24, 1959, plaintiff filed answers to defendant's interrogatories.

"On March 25, 1959, hearing was had on the show cause order, and on June 4, 1959 the trial court entered an order retaining the case on the docket and setting it for trial for July 22, 1959.

"On July 2, 1959, on defendant's motion, to which plaintiff agreed, the trial date of July 22, 1959 was vacated; and the case was continued.

"On March 11, 1960, defendant filed additional interrogatories for plaintiff to answer. On April 15, 1960, after an extension of time granted by the trial court, plaintiff filed answers to the additional interrogatories.

"On September 29, 1960, pursuant to Local Rule 12, effective March 1, 1960, the district court caused notice to be mailed to counsel for both parties scheduling a pre-trial conference in this case to be held in court on October 12, 1960, at 1:00 o'clock p. m." 291 F. 2d, at 543–544.

[3] See Fed. Rules Civ. Proc., 41 (b), p. 630, *infra*.

in the calendars of the District Courts. The power is of ancient origin, having its roots in judgments of *nonsuit* and *non prosequitur* entered at common law, *e. g.*, 3 Blackstone, Commentaries (1768), 295–296, and dismissals for want of prosecution of bills in equity, *e. g.*, *id.*, at 451. It has been expressly recognized in Federal Rule of Civil Procedure 41 (b), which provides, in pertinent part:

"(b) Involuntary Dismissal: Effect Thereof. For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him. . . . Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction or for improper venue, operates as an adjudication upon the merits."

Petitioner contends that the language of this Rule, by negative implication, prohibits involuntary dismissals for failure of the plaintiff to prosecute *except* upon motion by the defendant. In the present case there was no such motion.

We do not read Rule 41 (b) as implying any such restriction. Neither the permissive language of the Rule—which merely authorizes a motion by the defendant—nor its policy requires us to conclude that it was the purpose of the Rule to abrogate the power of courts, acting on their own initiative, to clear their calendars of cases that have remained dormant because of the inaction or dilatoriness of the parties seeking relief. The authority of a court to dismiss *sua sponte* for lack of prosecution has generally been considered an "inherent power," governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to

achieve the orderly and expeditious disposition of cases.[4] That it has long gone unquestioned is apparent not only from the many state court decisions sustaining such dismissals,[5] but even from language in this Court's opinion in *Redfield* v. *Ystalyfera Iron Co.*, 110 U. S. 174, 176.[6] It also has the sanction of wide usage among the District Courts.[7] It would require a much clearer expression of

---

[4] *E. g., Cage* v. *Cage*, 74 F. 2d 377; *Carnegie National Bank* v. *City of Wolf Point*, 110 F. 2d 569; *Hicks* v. *Bekins Moving & Storage Co.*, 115 F. 2d 406; *Zielinski* v. *United States*, 120 F. 2d 792; *American National Bank & Trust Co.* v. *United States*, 142 F. 2d 571; *Shotkin* v. *Westinghouse Elec. & Mfg. Co.*, 169 F. 2d 825; *Slavitt* v. *Meader*, 278 F. 2d 276.

[5] See, *e. g., Des Moines Union R. Co.* v. *District Court*, 170 Iowa 568, 153 N. W. 217; *Doughty* v. *Terminal R. Assn.*, 291 S. W. 2d 119 (Mo.); *Frytez* v. *Gruchacz*, 125 N. J. L. 630, 17 A. 2d 541; *Reed* v. *First National Bank*, 194 Ore. 45, 241 P. 2d 109; *Moshannon National Bank* v. *Iron Mountain Ranch Co.*, 45 Wyo. 265, 18 P. 2d 623; cf. *Hartford Accident & Indemnity Co.* v. *Sorrells*, 50 Ariz. 90, 69 P. 2d 240; *Thompson* v. *Foote*, 199 Ark. 474, 134 S. W. 2d 11; *Koon* v. *Barmettler*, 134 Colo. 221, 301 P. 2d 713.

[6] The issue in that case was whether a plaintiff was entitled to recover interest on a refund claim for customs duties paid under protest. In holding that interest for a 29–year period during which the suit remained dormant should not have been allowed, Mr. Justice Matthews, speaking for a unanimous Court, said: "This delay in prosecution would certainly have justified the court in dismissing the action on its own motion."

[7] In the more populous districts, where calendar congestion has become a severe problem, the District Courts, acting on their own initiative, have from time to time established special call calendars of "stale" cases for the purpose of dismissing those as to which neither adequate excuse for past delays nor reason for a further continuance appears. See, for example, the local rules of the following District Courts: Alaska Rule 16; Ariz. Rule 14; N. D. Cal. Rule 14; S. D. Cal. Rule 10 (d); Colo. Rule 24; Conn. Rule 15; Del. Rule 12; D. C. Rule 13; N. D. Fla. Rule 7; S. D. Fla. Rule 11; N. D. Ga. Rule 13 (c); Idaho Rule 8 (c); E. D. Ill. Rule 9; N. D. Ill. Gen. Rule 21; N. D. Ind. Rule 10; S. D. Ind. Rule 16; N. D. Iowa Rule 22; S. D. Iowa

purpose than Rule 41 (b) provides for us to assume that it was intended to abrogate so well-acknowledged a proposition.

Nor does the absence of notice as to the possibility of dismissal or the failure to hold an adversary hearing necessarily render such a dismissal void. It is true, of course, that "the fundamental requirement of due process is an opportunity to be heard upon such notice and proceedings as are adequate to safeguard the right for which the constitutional protection is invoked." *Anderson National Bank* v. *Luckett,* 321 U. S. 233, 246. But this does not mean that every order entered without notice and a preliminary adversary hearing offends due process. The adequacy of notice and hearing respecting proceedings that may affect a party's rights turns, to a considerable extent, on the knowledge which the circumstances show such party may be taken to have of the consequences of his own conduct. The circumstances here were such as to dispense with the necessity for advance notice and hearing.

In addition, the availability of a corrective remedy such as is provided by Federal Rule of Civil Procedure 60 (b)—which authorizes the reopening of cases in which final orders have been inadvisedly entered—renders the lack of prior notice of less consequence. Petitioner never sought to avail himself of the escape hatch provided by Rule 60 (b).

---

Rule 22; Kan. Rule 13; E. D. La. Gen. Rule 12; Me. Rule 15; Mass. Rule 12; W. D. Mich. Rule 8; Minn. Rule 3 (3); E. D. Mo. Rule 8 (g); Neb. Rule 18; Nev. Rule 9 (b); N. J. Rule 12; N. M. Rule 13; E. D. N. Y. Gen. Rule 23; N. D. N. Y. Gen. Rule 11; S. D. N. Y. Gen Rule 23; W. D. N. Y. Gen. Rule 11; N. D. Ohio Rule 6; S. D. Ohio Rule 8; E. D. Okla. Rule 12; E. D. Pa. Rule 18; M. D. Pa. Rule 21–A; S. Dak. Rule 9, § 4; S. D. Tex. Gen. Rule 22; Utah Rule 4 (c); E. D. Wash. Rule 23 (a); W. D. Wash. Rule 41; N. D. W. Va. Art. II, Rule 8; S. D. W. Va. Rule 8; E. D. Wis. Rule 11; W. D. Wis. Rule 15; Wyo. Rule 14.

Accordingly, when circumstances make such action appropriate, a District Court may dismiss a complaint for failure to prosecute even without affording notice of its intention to do so or providing an adversary hearing before acting. Whether such an order can stand on appeal depends not on power but on whether it was within the permissible range of the court's discretion.[8]

## II.

On this record we are unable to say that the District Court's dismissal of this action for failure to prosecute, as evidenced only partly by the failure of petitioner's counsel to appear at a duly scheduled pretrial conference, amounted to an abuse of discretion. It was certainly within the bounds of permissible discretion for the court to conclude that the telephone excuse offered by petitioner's counsel was inadequate to explain his failure to attend. And it could reasonably be inferred from his absence, as well as from the drawn-out history of the litigation (see note 2, *supra*),[9] that petitioner had been deliberately proceeding in dilatory fashion.

There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected

---

[8] Petitioner's contention that the District Court could not act in the conceded absence of any local rule covering the situation here is obviously unsound. Federal Rule of Civil Procedure 83 expressly provides that "in all cases not provided for by rule, the district courts may regulate their practice in any manner not inconsistent with these rules." In light of what has already been said we find no such inconsistency here.

[9] The record shows that this was the "oldest" case on the District Court's civil docket.

634

agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have "notice of all facts, notice of which can be charged upon the attorney." *Smith* v. *Ayer,* 101 U. S. 320, 326.[10]

We need not decide whether unexplained absence from a pretrial conference would *alone* justify a dismissal with prejudice if the record showed no other evidence of dilatoriness on the part of the plaintiff. For the District Court in this case relied on *all* the circumstances that were brought to its attention, including the earlier delays.[11]

[10] Clients have been held to be bound by their counsels' inaction in cases in which the inferences of conscious acquiescence have been less supportable than they are here, and when the consequences have been more serious. See, *e. g., United States ex rel. Reid* v. *Richmond,* 295 F. 2d 83, 89–90; *Egan* v. *Teets,* 251 F. 2d 571, 577 n. 9; *United States* v. *Sorrentino,* 175 F. 2d 721. Surely if a criminal defendant may be convicted because he did not have the presence of mind to repudiate his attorney's conduct in the course of a trial, a civil plaintiff may be deprived of his claim if he failed to see to it that his lawyer acted with dispatch in the prosecution of his lawsuit. And if an attorney's conduct falls substantially below what is reasonable under the circumstances, the client's remedy is against the attorney in a suit for malpractice. But keeping this suit alive merely because plaintiff should not be penalized for the omissions of his own attorney would be visiting the sins of plaintiff's lawyer upon the *defendant.* Moreover, this Court's own practice is in keeping with this general principle. For example, if counsel files a petition for certiorari out of time, we attribute the delay to the petitioner and do not request an explanation from the petitioner before acting on the petition.

[11] The history of the case belies any suggestion that the delay was the fault of the defendant or solely of the district judge who first ruled erroneously on the motion for judgment on the pleadings. After the mandate of the Court of Appeals was filed with the District Court, the trial date that was set was vacated on the plaintiff's motion. Thereafter, the plaintiff failed to answer the defendant's interrogatories from August 17, 1957, until the day before the hearing on the order to show cause why the case should not be dismissed for want of

And while the Court of Appeals did not expressly rest its judgment on petitioner's failure to prosecute, it nonetheless set out the entire history of the case (including the statement made by the district judge's secretary that it was "the oldest civil case on the court docket"), noted that the District Court had considered the absence at the pretrial conference in light of "the history of this litigation" and "of all the circumstances surrounding counsel's action in the case," 291 F. 2d, at 545, and held that there was no abuse of discretion in dismissing the action "under the circumstances of this case." *Id.*, at 546. This obviously amounts to no broader a holding than that the failure to appear at a pretrial conference may, in the context of other evidence of delay, be considered by a District Court as justifying a dismissal with prejudice.[12]

Nor need we consider whether the District Court would have been abusing its discretion had it rejected a motion under Rule 60 (b) which was accompanied by a more adequate explanation for the absence of petitioner's counsel from the pretrial conference. No such motion was ever

---

prosecution—which was more than 19 months later. Although the next delay was occasioned by the defendant's motion, it was consented to by the plaintiff and there is no showing whatever that plaintiff ever made any effort to bring the case to trial. In fact, when the defendant submitted further interrogatories, plaintiff again moved to have the time to answer extended. Against this background, it is hardly surprising that the District Court concluded that the failure to appear for a pretrial conference was merely another delaying tactic.

[12] Even if the judgment of the Court of Appeals rested on the ground that counsel's "failure" to attend the pretrial conference sufficed by itself to justify the dismissal, it is our duty, without reaching the broader question, to sustain the District Court on its narrower holding if, as we decide, that holding was correct. *E. g., Walling* v. *General Industries Co.*, 330 U. S. 545, 547; *Langnes* v. *Green*, 282 U. S. 531, 536–537; *United States* v. *American Railway Express Co.*, 265 U. S. 425, 435–436; see *Securities & Exchange Comm'n* v. *Chenery Corp.*, 318 U. S. 80, 88.

made, so that there is nothing in the record before us to indicate that counsel's failure to attend the pretrial conference was other than deliberate or the product of neglect.

Finally, this is not a case in which failure to comply with a court order "was due to inability fostered neither by . . . [petitioner's] own conduct nor by circumstances within its control." *Societe Internationale* v. *Rogers*, 357 U. S. 197, 211. Petitioner's counsel received due notice of the scheduling of the pretrial conference, and cannot now be heard to say that he could not have foreseen the consequences of his own default in attendance.

*Affirmed.*

MR. JUSTICE FRANKFURTER took no part in the decision of this case.

MR. JUSTICE WHITE took no part in the consideration or decision of this case.

MR. JUSTICE DOUGLAS dissents.

MR. JUSTICE BLACK, with whom THE CHIEF JUSTICE concurs, dissenting.

I think that the order of the District Court dismissing this case has no sound basis in law, in fact or in justice. The petitioner William Link brought an action to recover damages for alleged serious and permanent injuries suffered in a collision between his truck and a train operated by the respondent Wabash Railroad Company. The District Court dismissed that action without notice of any kind to the plaintiff Link or to his lawyer shortly after the lawyer failed to appear at a scheduled pretrial conference without what the trial judge regarded as an adequate excuse. The order of dismissal apparently purports to end petitioner's lawsuit and bar forever his right

to recover compensation for his injuries.[1] Under these circumstances, I think Judge Schnackenberg was entirely correct in his dissent to the opinion of the majority on the Court of Appeals for the Seventh Circuit upholding the dismissal when he said:

> "The order now affirmed has inflicted a serious injury upon an injured man and his family, who are innocent of any wrongdoing. Plaintiff's cause of action . . . was his property. It has been destroyed. The district court, to punish a lawyer, has confiscated another's property without process of law, which offends the constitution. A district court does not lack disciplinary authority over an attorney and there is no justification, moral or legal, for its punishment of an innocent litigant for the personal conduct of his counsel. Because it was neither necessary nor proper to visit the sin of the lawyer upon his client, I would reverse." [2]

As I understand the opinion of the Court here, it upholds the District Court's dismissal order upon the ground of "want of prosecution" and "dilatoriness on the part of the plaintiff," making it unnecessary, as the Court views the case, to "decide whether unexplained absence from a pretrial conference would *alone* justify a dismissal with prejudice . . . ." I do not think that there is any basis in the record to support a dismissal of this case for "want of prosecution," for "dilatoriness on the part of the plaintiff" or for any other reason. In the first place, it seems to me

---

[1] Since the order of dismissal here did not specify that it was without prejudice to the plaintiff's right to reinstitute the action, the dismissal operates as a judgment on the merits if Rule 41 (b) of the Federal Rules of Civil Procedure applies. Of course, if Rule 41 (b) is not the source of the power exercised here, as this Court seems to say, the order of dismissal would still end plaintiff's chance of recovery because his cause of action is now barred by the statute of limitations.

[2] 291 F. 2d 542, 548.

that the Court is in error when it suggests that both the District Court and the Court of Appeals relied on all the circumstances of this case, including its "earlier delays," to justify its dismissal with prejudice. It is true that the trial judge, though expressly basing his order entirely upon the failure of petitioner's lawyer to appear at the pretrial conference,[3] did mention the earlier history of the case as a ground for his action in a conversation with the respondent's lawyer just before the dismissal. But as I read the Court of Appeals' opinion, it neither relied upon nor even considered such a ground to support its judgment. The opening statement of the Court of Appeals' opinion certainly treated the case as resting not upon any general want of prosecution but instead wholly upon the failure of the lawyer to appear: "This is an appeal by plaintiff from an order of the district court entered October 12, 1960 dismissing this cause of action for failure of plaintiff's counsel to appear in court for a pre-trial conference scheduled for hearing on that date."[4] From this opening statement to the end of the majority opinion, I think that every argument and sentence in that opinion is directed to supporting the Court of Appeals' conclusion that the District Court had power to dismiss the case not for any "want of prosecution" but solely "as a sanction for disobedience of a court order."[5] Indeed, the only

---

[3] The order of dismissal stated as follows: "Pursuant to the inherent powers of the Court, and upon failure of plaintiff's counsel to appear at a pre-trial, which was scheduled for today, October 12, 1960, at 1:00 o'clock, pursuant to notice, under Rule 12, counsel having failed to give any good and sufficient reason for not appearing at said pre-trial, the cause is now dismissed."

[4] 291 F. 2d, at 543.

[5] *Id.*, at 546. It is true that the Court of Appeals set out the history of the case but it made no attempt to rely upon that history to justify its judgment of affirmance. Its references to the "circumstances" of the case quoted in the Court's opinion simply cannot be magnified to indicate any such reliance.

reference to "want of prosecution" in the Court of Appeals' entire opinion is a parenthetical one to describe that court's holding in another case "where we upheld the dismissal of a cause under *another* local rule . . . ." [6] The plain import of the Court of Appeals' opinion is, to my mind, starkly revealed when its refusal to rely upon any theory of "want of prosecution" is considered in connection with the emphatic statements of Judge Schnackenberg in dissent: "Defendant's counsel makes no effort to rely upon want of prosecution as a ground for the involuntary dismissal. Obviously defendant is in no position to make such a contention, inasmuch as it caused the district court to vacate the order setting the case for trial on July 22, 1959, and continue the case." [7] It is impossible for me to believe that the majority of the Court of Appeals would have left this statement unchallenged if they had wanted to place any reliance at all upon "want of prosecution," "dilatoriness on the part of the plaintiff," or any ground other than their desire to approve a sanction upon Link's lawyer for his failure to appear at the pretrial conference.

Secondly, I think that this Court's decision to ignore the single ground upon which I believe that the Court of Appeals rested and to resurrect the "want of prosecution" theory from the trial court colloquy is wrong because this case has been a very live one from the date it was filed right up to this very moment. It is true that the case when dismissed had been pending for a long time, that is, from August 24, 1954, to the date of dismissal, October 12, 1960. But during this entire period of time, motions and activities of various kinds both by the lawyers and by the trial judge were taking place in the court. Certainly it would be impossible for anyone to suggest that the plaintiff Link

---

[6] *Id.*, at 545. (Emphasis supplied.)    [7] *Id.*, at 547.

or his lawyer was responsible for the first three years of delay in the trial of the case. If responsibility is to be placed upon anyone for that delay, it must be placed upon the lawyers for the defendant and upon the trial judge. One month after the lawsuit was filed the defendant appeared and answered the complaint. Some months later the defendant filed a motion for judgment on the pleadings, arguing that the complaint failed to state a cause of action. On November 30, 1955, more than a year after the case was filed, the district judge granted the motion for judgment on the pleadings and entered his first dismissal of the case. On October 10, 1956, however, the Court of Appeals for the Seventh Circuit, in an opinion by Judge Schnackenberg, reversed this dismissal and remanded the case for trial.[8] The railroad then asked this Court to grant certiorari and review the Court of Appeals' holding but, on February 25, 1957, we denied certiorari.[9] At this stage, the case had been delayed for almost three years by an erroneous ruling of the trial judge made at the instance of the defendant's lawyers.

Upon remand, the District Court set the case for hearing on July 17, 1957, but this order was vacated and the cause continued "on motion of the plaintiff, and defendant not objecting . . . ." This continuance of the case by agreement between the plaintiff and the defendant of course provides not even a scintilla of evidence to support a dismissal for want of prosecution. Two months later, in an effort to buttress its defense for the approaching trial on the merits, the railroad filed interrogatories which the plaintiff answered. It is true that these interrogatories were not answered until some 19 months after they were filed. But there is no indication in the record that the defendant tried to get the interrogatories answered earlier. And every trial lawyer knows that the failure of a lawyer

[8] 237 F. 2d 1.          [9] 352 U. S. 1003.

to answer interrogatories designed to solicit answers to be used against his client before those answers are demanded by the party filing the interrogatories is nothing more than a normal trial tactic of a lawyer who is trying to win the case for his client. On February 24, 1959, the trial judge on his own motion issued notice to the parties that he would dismiss the case for the second time on March 25, 1959, unless he ordered otherwise. After holding hearings on that date, however, and considering the arguments of counsel, the trial judge entered on June 4, 1959, an order retaining the case on his docket and setting it for trial.on July 22, 1959. This action of the court in retaining the case on its docket shows that the trial judge certainly did not think at that time that the case was not being prosecuted. But before the case could be tried on July 22, the judge granted another continuance, this time at the request of the defendant with the plaintiff not objecting. Although this continuance at the request of the defendant, like the previous three-year delay directly attributable to the defendant and the court, doubtless contributed to the age of this case on the court's docket, I do not suppose (although I am not certain) that it is one of the "circumstances" which the Court refers to as justifying the dismissal of the case. On March 11, 1960, six years after this lawsuit was filed, the defendant's lawyers filed still more interrogatories for plaintiff to answer. One month and four days later after an extension of time granted by the trial court, these interrogatories were answered. This certainly does not seem like an extraordinary delay in answering interrogatories which apparently had taken the defendant six years to conceive and prepare.

Five months after the plaintiff answered defendant's March 11 interrogatories, the trial judge, again on his own motion, issued notice scheduling a pretrial conference on October 12, 1960. This was the pretrial

conference at which petitioner's lawyer failed to appear. But even that failure showed no inclination on the part of the plaintiff or his lawyer to abandon the lawsuit, for the lawyer called the clerk of the District Court over long-distance telephone and also talked to the trial judge's secretary on the morning of the day of the conference to explain why he could not be present on October 12 and to urge that the pretrial conference be passed over to the next day, October 13, to give him a chance to be present. It is true that the trial judge later refused to accept the lawyer's explanation and this ruling, if correct, indicates that the lawyer may have been guilty of some kind of breach of his responsibility to his client and to the court. It does not indicate, however, and it cannot by any stretch of the imagination be made to indicate that the lawyer, much less the plaintiff himself, was acting in the way people do who let their lawsuits die for "want of prosecution." The record shows that neither the lawyer nor the plaintiff himself was given any sort of notice by the judge or by his secretary that the request for a one-day postponement would be denied, even though the defendant's request for indefinite postponement had been granted only three months earlier. Nor did the lawyer or the plaintiff receive any notice that a failure to appear at the pretrial conference would result in the drastic sanction of dismissal of the case.[10] And I think that nothing short of clairvoyance would have enabled either of them to anticipate that this Court, or any court, would approve dismissal of the case for "want of prosecution."

Under the foregoing facts, it seems to me that it inflicts the grossest kind of injustice upon this petitioner to

---

[10] Thus, even under the Court's theory that a client must always be charged with " 'notice of all facts, notice of which can be charged upon the attorney,' " the plaintiff here cannot be charged with notice that his lawsuit would be dismissed upon the failure of his lawyer to appear at the pretrial conference.

uphold dismissal of his case on the ground that it was not being prosecuted. Of course it was. Counsel for both parties apparently were doing the best they could to bring the case to a successful conclusion for their respective clients. The "earlier delays" preceding the plaintiff's lawyer's failure to appear at the pretrial hearing, far from showing a "want of prosecution," actually strengthen the conclusion that the case was being prosecuted because by far the greater part of these delays was due to steps that were being taken in furtherance of the litigation. Only the two continuances in the case, one at the request of counsel for the plaintiff and the second at the request of counsel for the defendant, created delays not obviously related to that end. And if these delays are to be punished, I see no reason why the punishment should be limited to the plaintiff and his lawyer. I must say that it appears to me to be a sort of unequal justice that would punish the plaintiff or even his lawyer for "earlier delays" which undoubtedly were due in major part to an erroneous ruling of the trial judge with regard to the sufficiency of the pleadings, a continuance of the trial brought about at the request of the defendant, and the several motions that the defendant's counsel made along through the years in connection with interrogatories and additional interrogatories which were to be used for no purpose other than to defeat the plaintiff's actively prosecuted lawsuit.

Even assuming in the face of these plain facts, however, that all the blame for the six years' delay in this case could be laid at the feet of plaintiff's lawyer, it seems to me to be contrary to the most fundamental ideas of fairness and justice to impose the punishment for the lawyer's failure to prosecute upon the plaintiff who, so far as this record shows, was simply trusting his lawyer to take care of his case as clients generally do. The Court dismisses this whole question of punishing the plaintiff

Link for the alleged fault of his lawyer with the simple generalized statement: "Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent." [11]   One may readily accept

---

[11] The Court does cite three cases in an effort to support this general proposition but none of those cases even suggests so harsh and expansive a rule.   Moreover, they deal with situations so far removed from that presented here that their inapplicability as precedent for the conclusion reached in this case is apparent.   *United States ex rel. Reid* v. *Richmond,* 295 F. 2d 83, and *United States* v. *Sorrentino,* 175 F. 2d 721, were criminal cases in each of which the defendant sought to upset his conviction on the ground that his lawyers had exercised poor judgment in handling one of the multitude of decisions that have to be made in the trial of every lawsuit.   Reid's lawyers had failed to make an objection to one piece of evidence.   The Court of Appeals, finding that this action "had much to commend it" as trial strategy, held that any objection to the evidence must be considered waived and that "Reid must be bound by what his lawyers did and his acquiescence in that course by his own testimony."   295 F. 2d, at 89–90.   Even this holding provoked sharp dissent: "A holding that counsel assigned an accused may waive him into the electric chair seems in any event dubious."   *Id.,* at 90–91.   Sorrentino's lawyers waived his right to object to an order of the trial judge reducing the number of spectators at his trial.   The Court of Appeals held that Sorrentino was bound by this waiver, saying: "Sorrentino did not at any time indicate to the court that he was not fully satisfied with the action which the trial judge had thus taken with his counsel's consent.   It must, therefore, be concluded that he acquiesced in his counsel's judgment that his interests would not be prejudiced and indeed might be served by the reduction which the court ordered in the number of spectators at the trial."   175 F. 2d, at 723–724.   Certainly no one could say of Link, as it was said of Sorrentino, that "his interests would not be prejudiced and indeed might be served" by the dismissal of his case.   *Egan* v. *Teets,* 251 F. 2d 571, involved an allegation that the defendant's original appeal papers had been suppressed and the court held merely that the failure of the defendant's counsel to raise this point in the state courts after the defendant himself knew of the alleged suppression plus the failure of the defendant to offer any explanation for not raising the point in the state courts must be taken as waiving the point.   251 F. 2d, at 576–577.   Here, it cannot

the statement that there are circumstances under which a client is responsible for the acts or omissions of his attorney. But it stretches this generalized statement too far to say that he must always do that. This case is a good illustration of the deplorable kind of injustice that can come from the acceptance of any such mechanical rule.

Link filed an action in court, as was his right, alleging the infliction of serious injuries upon him by the railroad for which he sought damages. His case was delayed for three years because of the trial judge's erroneous ruling on a question of the technical sufficiency of the complaint, a ruling which, if it had not been reversed, would have frustrated the plaintiff's right to a trial on the merits. This ruling of course should never have been made, for it was plainly inconsistent with the whole philosophy underlying the modern liberal rules of procedure which govern civil trials in the federal courts. When the Court of Appeals upheld the complaint, reversed the trial court and remanded the case for trial, the parties engaged in a number of activities obviously designed to bring the case to trial. On at least two separate occasions, the plaintiff himself was called upon to respond to interrogatories submitted by the railroad. Under these circumstances, the plaintiff simply had no way of knowing that there was even the slightest danger that his potentially valuable lawsuit was going to be thrown out of court because of some default on the part of his lawyer. Quite the contrary, the plaintiff had every reason to believe that his lawyer, who had obtained reversal of the trial judge's

---

be suggested that plaintiff's counsel has *waived* the plaintiff's right to have his lawsuit tried, since he has been holding on tenaciously to that right for eight years, four of which have been spent in trying to get the Court of Appeals and this Court to force the trial judge to give him a trial on the merits. Certainly, nothing in the opinion in *Egan* suggests that if the defendant had been able to allege and prove that his appeal papers had been suppressed by wrongful conduct on the part of his lawyer, he would nonetheless be bound by that conduct.

first erroneous order of dismissal in the Court of Appeals, was eminently well qualified to represent his interests and would do his best to win the lawsuit.

There surely can be no doubt that if the plaintiff's lawyer had gone into court without authority and asked the court to dismiss the case so as to bar any future suit from being filed, this Court would repudiate such conduct and give the plaintiff a remedy for the wrong so perpetrated against him. Or had the trial judge here, instead of putting an end to plaintiff's substantial cause of action, simply imposed a fine of several thousand dollars upon the plaintiff because of his lawyer's neglect, I cannot doubt that this Court would unanimously reverse such an unjust penalty. The result actually reached here, however, is that this Court condones a situation no different in fact from either of those described above. The plaintiff's cause of action is valuable property within the generally accepted sense of that word, and, as such, it is entitled to the protections of the Constitution. Due process requires that property shall not be taken away without notice and hearing. I do not see how the result here can be squared with that fundamental constitutional requirement.

Moreover, to say that the sins or faults or delinquencies of a lawyer must always be visited upon his client so as to impose tremendous financial penalties upon him, as here, is to ignore the practicalities and realities of the lawyer-client relationship.[12] Lawyers everywhere in this country are granted licenses presumably because of their skill, their integrity, their learning in the law and their

[12] I am not quite able to understand the Court's suggestion that "keeping this suit alive . . . would be visiting the sins of plaintiff's lawyer upon the *defendant*." I do not see how it can be regarded as a punishment to compel a person to try his lawsuit on its merits before an impartial judicial tribunal established under and operating in accordance with the Constitution of the United States.

dependability. While there may be some clients sophisticated enough in the affairs of the world to be able to select the good from the bad among this mass of lawyers throughout the country, this unfortunately cannot always be the case. The average individual called upon, perhaps for the first time in his life, to select a lawyer to try a lawsuit may happen to choose the best lawyer or he may happen to choose one of the worst. He has a right to rely at least to some extent upon the fact that a lawyer has a license. From this he is also entitled to believe that the lawyer has the ability to look out for his case and that he should leave the lawyer free from constraint in doing so. Surely it cannot be said that there was a duty resting upon Link, a layman plaintiff, to try to supervise the daily professional services of the lawyer he had chosen to represent him. How could he know, even assuming that it is true, that his lawyer was a careless man or that he would have an adverse effect upon the trial judge by failing to appear when ordered? How could he know or why should he be presumed to know that it was his duty to see that the many steps a lawyer needs to take to bring his case to trial had been taken by his lawyer? Why should a client be awakened to his lawyer's incapacity for the first time by a sudden brutal pronouncement of the court: "Your lawyer has failed to perform his duty in prosecuting your case and we are therefore throwing you out of court on your heels"? So far as this record shows, the plaintiff never received one iota of information of any kind, character or type that should have put him on notice as an ordinary layman that his lawyer was not doing his duty.[13]

---

[13] The Court's suggestion that petitioner might have been able to file a motion under Rule 60 (b) "accompanied by a more adequate explanation for the absence of petitioner's counsel from the pretrial conference" is no answer at all to the problem presented by the

Any general rule that clients must always suffer for the mistakes of their lawyers simply ignores all these problems. If a general rule is to be adopted, I think it would be far better in the interest of the administration of *justice,* and far more realistic in the light of what the relationship between a lawyer and his client actually is, to adopt the rule that no client is ever to be penalized, as this plaintiff has been, because of the conduct of his lawyer unless notice is given to the client himself that such a threat hangs over his head. Such a rule would do nothing more than incorporate basic constitutional requirements of fairness into the administration of justice in this country.

The Court seems to find some reason for holding that this plaintiff can be penalized without notice because of a program certain courts have adopted to end congestion on their dockets by setting down long-pending cases for trial. It is of course desirable that the congestion on court dockets be reduced in every way possible consistent with the fair administration of justice. But that laudable objective should not be sought in a way which undercuts the very purposes for which courts were created— that is, to try cases on their merits and render judgments in accordance with the substantial rights of the parties. Where a case has so little merit that it is not being prosecuted, a trial court can of course properly dispose of it under fair constitutional procedures. There is not one fact in this record, however, from which an inference can be drawn that the case of Link against the Wabash Railroad Company is such a case. When we allow the desire to reduce court congestion to justify the sacrifice of substantial rights of the litigants in cases like this, we attempt to promote speed in administration, which is

---

plaintiff's lack of notice. Whether the lawyer had "a more adequate explanation" or not, I think the plaintiff himself is entitled to due process before his property is taken from him.

desirable, at the expense of justice, which is indispensable to any court system worthy of its name.

Moreover, it seems plain to me that any attempt to cut down on court congestion by dismissing meritorious lawsuits is doomed to fail even in its misguided purpose of promoting speed in judicial administration. Litigants with meritorious lawsuits are not likely to accept unfair rulings of that kind without exhausting all available appellate remedies. Consequently, any reduction of trial court dockets accomplished by such dismissals will be more than offset by the increased burden on appellate courts. This case seems to me an excellent example of the sort of wholly unnecessary waste of judicial resources which can result from such overzealous protection of trial court dockets. The case has twice been before the Court of Appeals and has twice been brought to this Court as a result of "time-saving" rulings handed down by the trial judge.

It is true that by its ruling today the Court finally puts an end to this case and thus clears it from all federal dockets. But in view of the fact that the merits of the case have never been reached, I cannot believe that there should be too much rejoicing at this fact. The end result of the procedures adopted here has been that much time has been wasted and yet no justice has been done. I find it highly regrettable that the Court feels compelled to place its stamp of approval upon such procedures.

It may not be of much importance to anyone other than the plaintiff here and his family whether this case is tried on its merits or not. To my mind, however, it is of very great importance to everyone in this country that we do not establish the practice of throwing litigants out of court without notice to them solely because they are credulous enough to entrust their cases to lawyers whose names are accredited as worthy and capable by their government. I fear that this case is not likely to stand out in the future as the best example of American justice.