**In re MRM SECURITY SYSTEMS, INC., Debtor.**

**Bankruptcy No. 2–92–01786.**

United States Bankruptcy Court, D. Connecticut.

July 18, 1994.

Derek M. Johnson, Ruben and Johnson, P.C., Hartford, CT, for Michael Industries, Inc.

Jeffrey G. Grody, Day, Berry & Howard, Hartford, CT, for American Fence Co., Inc. and American Security Fence Corp.

Neal Ossen, Chapter 7 Trustee, Ossen & Murphy, Hartford, CT.

### RULING AND ORDER ON MOTION FOR RELIEF FROM FINAL ORDER

ROBERT L. KRECHEVSKY, Chief Judge.

### I.

### ISSUE

The matter before the court is a motion filed by Michael Industries, Inc. (MII) on September 24, 1993, pursuant to Fed.R.Bank.P. 9024 and Fed.R.Civ.P. 60(b)(1), to relieve MII from a final order the court entered on July 16, 1993. The relief MII seeks, primarily based on the ground of "excusable neglect," is that the court vacate the July 16, 1993 order and schedule a new hearing on the subject matter of the order—approval of a compromise of a claim asserted by the debtor's estate against American Fence Co., Inc. and American Security Fence

Corp. (collectively "American Fence"). The following background is based upon an evidentiary hearing and the memoranda submitted by the parties.

## II.

### BACKGROUND

MRM Security Systems, Inc., the debtor, commenced this case on May 4, 1992 with the filing of a Chapter 11 petition. While operating as a debtor-in-possession, the debtor negotiated a sales agreement with MII which provided that MII purchase the debtor's tangible and intangible assets, except accounts receivable. The court, on October 29, 1992, entered an order authorizing the sale and allocating the sale proceeds, totaling $215,000, as follows: $20,000 for the debtor's patents and $195,000 for the remaining assets. Listed as an asset on the debtor's Chapter 11 schedules was a counterclaim the debtor had asserted in *American Fence Co. v. MRM Sec. Sys., Inc.,* 710 F.Supp. 37 (D.Conn.1989), a patent-infringement action pending in the Connecticut U.S. District Court. The debtor was a co-defendant in this action along with the debtor's president, Michael R. Mainiero (Mainiero).

On November 10, 1992, shortly after the asset sale had been completed, the court converted the debtor's case to one under Chapter 7, approved the appointment of Neal Ossen, Esq. (Ossen) as Chapter 7 trustee, and set December 17, 1992 as the date for the § 341 meeting of creditors. Anthony J. Casella, Esq. (Casella), an attorney who had represented the debtor prepetition in the pending patent litigation, attended the § 341 meeting and suggested to Ossen that he, Casella, be retained to handle the debtor's counterclaim. Ossen, on March 26, 1993, filed an application with the court for the approval of Casella's employment to represent the estate in the patent litigation, but Ossen later withdrew the application prior to any court action. MII subsequently advised Ossen in a letter dated May 25, 1993 that MII had engaged Casella to represent it with regard to any settlement of the patent-infringement litigation.

Ossen, on June 11, 1993, filed a motion for approval of a compromise of the counterclaim, asserting that the counterclaim against American Fence was an asset of the debtor's estate. Under the compromise, American Fence agreed to pay the debtor's estate $10,000 in return for Ossen stipulating to judgment in the patent litigation and "quitclaim[ing] any residual interest in the intellectual property once held by the estate...." June 11, 1993 Motion ¶ 5. American Fence also agreed to withdraw its proof of claim filed in the debtor's case. The clerk's office scheduled a hearing on the motion for July 7, 1993 at 11 a.m. The court's proceeding memorandum for the July 7, 1993 hearing indicates that Ossen, Jeffrey G. Grody, Esq. (Grody), an attorney for American Fence, Casella and Richard L. Lambert (Lambert), an officer of MII, were present in court. Ossen requested that the court continue the hearing to July 16, 1993, stating that American Fence was reviewing its willingness to compromise and that an hour of hearing time would be needed. Lambert objected to the continuance stating that he had "counsel here" and "I have come here from Michigan to fight for an asset that we acquired in a distribution." July 7, 1993 Tr. at 3. Casella made no statement. The court ordered the hearing continued to July 16, 1993 at 2:00 p.m.

On July 16, 1993, Ossen, Grody, and Mainiero were present in court. No one appeared for MII. When the clerk first called the motion to compromise, Mainiero stated that, as the debtor's "former CEO" and a creditor of the estate, he objected to the compromise. The court stated, "Okay. I'll pass the matter and I'll hear it later." July 16, 1993 Tr. at 2. When the matter was later called, Ossen advised that Mainiero had left the courtroom and not returned. Ossen and Grody proceeded to place on the record the reasons for the compromise, following which the court approved the compromise and entered its written order.[1] On August 24, 1993, pursuant to a stipulation executed by American Fence and Ossen, the debtor's counterclaim against American Fence was dismissed with prejudice. Ossen has received, and still

---

1. No party had filed a written objection to the    compromise.

retains, the $10,000 due under the compromise. American Fence has withdrawn its proof of claim filed in the debtor's estate.

On September 24, 1993, MII filed its motion for relief from the order approving the compromise. MII's papers stated that MII did not appear at the July 16, 1993 hearing because it had not completed negotiations to retain counsel to pursue its objection to the compromise based upon its assertion that MII had acquired the debtor's counterclaim in the asset purchase. MII contended that it relied upon Mainiero to be present in court and obtain a continuance of the July 16, 1993 hearing, and that Mainiero had interpreted the court's statement, that it would "pass the matter," as an order continuing the hearing to a later, unspecified, date. Mainiero had so advised MII. MII further asserted that it did not learn that the court had approved the compromise until after MII completed negotiations in August 1993 to retain the law firm of Hebb & Gitlin to represent it in its objection, and that Hebb & Gitlin thereafter promptly filed the present motion.

## III.

### DISCUSSION

Rule 60(b)(1) states, in pertinent part, that "[o]n motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect...." Fed.R.Civ.P. 60(b)(1). MII argues that the circumstances outlined in Section II constitute a type of negligence on its part that comprises "excusable neglect" as that phrase was recently construed by the Supreme Court in *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership,* — U.S. —, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993).

Analogizing the present situation to a motion brought by a party seeking to set aside a default judgment, MII contends that applicable Rule 60(b)(1) standards dictate reopening the order because (1) MII's conduct was not willful, (2) its objection to the compromise has substantial merit, and (3) neither the trustee nor American Fence would be prejudiced by reopening the order. *See* MII's Brief at 10 (citing *Davis v. Musler,* 713 F.2d 907, 915 (2d Cir.1983) (stating that the criteria for setting aside a default judgment "include (1) whether the default was willful; (2) whether defendant has a meritorious defense; and (3) the level of prejudice that may occur to the non-defaulting party if relief is granted")).

Even accepting MII's contention that the standard for relief under Rule 60(b)(1) in this situation is roughly equivalent to the standards for setting aside a default judgment,[2] the court finds that MII's decision not to appear through an attorney at the July 16th hearing does not constitute excusable neglect, but rather was the product of a conscious choice not to retain counsel for that hearing. MII admits it chose not to have counsel appear on its behalf because MII had not completed what it characterized as lengthy fee negotiations with Hebb & Gitlin, its previous bankruptcy counsel for the asset purchase. Lambert testified that, not having concluded a satisfactory attorney's retention agreement, he asked Mainiero to go to the court to obtain an adjournment for at least a week. Mainiero never advised the court he was present at Lambert's request. He stated he was there on his own behalf as a creditor of the estate.[3] His unfamiliarity with courtroom procedure does not translate to excusable neglect entitling MII to reopen the order compromising the claim. *Cf. Link v. Wabash R.R. Co.,* 370 U.S. 626, 633–34, 82 S.Ct. 1386, 1390–91, 8 L.Ed.2d 734 (1962) (parties cannot avoid consequences of acts or omissions of freely selected agent, and proceeding properly dismissed when attorney failed to attend scheduled pretrial confer-

---

**2.** With one exception, Fed.R.Bankr.P. 7001 requires an adversary proceeding, not motion practice, for the determination of ownership interests in property. *See* Fed.R.Bankr.P. 7001.

**3.** Mainiero explained to the court that

I'm not an attorney and I don't have an attorney with me, because he couldn't be here today at the last minute. I'm here to object to the compromise on the basis of course, that I would like to have an attorney properly and professional [sic] to present to the court. July 16, 1993 Tr. at 2.

ence); *Longshore v. Bhandari (In re Bhandari),* 161 B.R. 315, 318 (Bankr.N.D.Ga.1993) (holding that debtor had not shown excusable neglect when his failure to produce financial records was the result of intentional and conscious decisions, rather than from neglect or negligence); *Applebaum v. Arnow (In re Arnow),* 159 B.R. 676, 680 (Bankr.E.D.N.Y. 1993) (creditor not entitled to relief from order dismissing complaint on theory that creditor's failure to appear at rescheduled hearing was result of excusable neglect).

MII has not established that the relevant circumstances warrant relief from the order compromising the claim. The court makes no finding on the merits of MII's assertion that it had purchased the claim at issue.

### IV.

#### *CONCLUSION*

MII's motion to relieve it from the final order entered by the court on July 16, 1993 must be, and hereby is, denied. It is

SO ORDERED.