**The ESTATE OF Christopher G.L. WALLACE, by and through its Personal Representatives, Faith Evans and Voletta Wallace, et al., Plaintiffs,**

v.

**CITY OF LOS ANGELES, et al., Defendants.**

**No. CV 02–2929 FMC (RZX).**

United States District Court, C.D. California.

July 6, 2005.

Dennis W. Chang, Dennis W. Chang Law Offices, Los Angeles, CA, Perry R. Sanders, Sanders Crochet & Chism, Lake Charles, LA, Robert J. Frank, Tegtmeier Frank & Jones, Colorado Springs, CO, for Plaintiffs.

Christine Whitaker, Los Angeles City Attorney's Office Police Discovery Div., Los

Angeles, CA, Paul N. Paquette, Los Angeles, CA, Lawrence M. Dudek, Santa Ana City Attorney Office, Santa Ana, CA, David Mack, Talladega, AL, for Defendants.

## ORDER GRANTING PLAINTIFFS' MOTION FOR MISTRIAL AND ATTORNEY'S FEES

COOPER, District Judge.

This matter came on for trial before a jury on June 21, 2005. Several days into the trial, on a Friday afternoon, plaintiffs' counsel disclosed to the Court and opposing counsel that he had received a telephone call from someone claiming to be a former officer of the Los Angeles Police Department. That person provided detailed information about the existence of evidence concerning the Wallace murder. The Court directed plaintiffs' counsel to provide defense counsel with all available information about this development, and directed defense counsel to conduct a thorough investigation. The trial was temporarily adjourned.

That weekend, counsel for the City and representatives of the Los Angeles Police Department conducted a physical search of particular police facilities, as a result of which previously undisclosed evidence was discovered, much of which was in the desk or cabinet of Det. Steven Katz, the lead detective in the Wallace murder investigation. The documents centered around interviews by numerous police officers of an incarcerated informant,[1] who had been Rafael Perez's cellmate for some extended period of time. He reported that Perez had told him about his and Mack's involvement with Death Row Records and their activities at the Peterson Automotive Museum the night of Biggie Smalls' murder. Monday morning, scores of documents were turned over to plaintiffs' counsel and the Court. The Court gave counsel additional time to review the material and authorized the taking of certain depositions in light of the newly discovered information.

Over the next few days, more and more documents were turned over for the first time, or their existence was disclosed when plaintiffs' counsel examined the new material.

On Tuesday, July 5, 2005, the day the trial was scheduled to resume, plaintiffs moved the Court for an Entry of Default against the defendants or, in the alternative, a Mistrial and an award of attorneys' fees. The Court does not believe that the extreme sanction of striking defendants' answer and entering their default is warranted in this case. The Court does find, however, that no sanction other than a mistrial will alleviate the prejudice to plaintiffs caused by defendants' conduct.

### Authority

Two sources of authority empower a trial court to impose sanctions on parties before it. Fed.R. Civ.P. 37(c)(1) deals with a party's failure to amend a prior response to discovery, and authorizes the court to award attorney's fees caused by the discovery violation, and to impose evidentiary or even terminating sanctions, commensurate with the party's conduct.

Additionally, federal courts have inherent power to sanction conduct that abuses the judicial process. This power is necessarily vested in courts to enable them to manage their own affairs and achieve the proper disposition of cases. *Link v. Wabash R.R. Co.,* 370 U.S. 626, 630–631, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962).

### Discussion

Rule 37 is clearly implicated in this case. Detective Katz was deposed not once, but three times, as the defendants' 30(b)(6) witness—the person most knowledgeable about the documents surrounding the investigation of the Wallace murder. In August 2003, he testified that the file provided to the plaintiffs contained, to the best of his knowledge, all of the information developed by the Los Angeles Police Department concerning the case. At that time, he had in his desk or cabinet voluminous materials concerning statements by Perez's cellmate about the murder. Interrogatories propounded to the

---

1. The identity of the inmate will not be disclosed in this Order, although the Court is aware it has been revealed in other papers filed with the Court.

defendant seeking information about the involvement of Mack in the murder were answered on May 17, 2004, stating that no such information existed.[2]

In fact, the following items, all of which were subject to discovery, were revealed to the plaintiffs within the past ten days.[3]

Tape recordings of interviews with the inmate

Tape logs of those interviews

Transcripts of Board of Rights testimony by the inmate

TEAMS report re David Mack [4]

Det. Armas notes of 11/13/00 interview of inmate

Employee Report made after 11/13 interview

Documentation of police interview of inmate 12/10/00

Summary of 12/19/00 interview of inmate by Armas

Employee Report made after 12/19 interview

1/14/01  Employee Report to Weber

4/3/01  Armas Employee Report re Smalls Murder

Transcripts of three additional Board of Rights hearings

4/6/01  report of inmate interview

11/2/01  interview notes of Cook

1/24/01  interview of inmate by Armas

Katz chronology of trips to interview inmate

Handwritten statements of inmate

Det. Bub's notes of interviews with inmate

The sheer volume of information attests to the seriousness with which the defendant treated this informant's statements and be-

lies defendants' current position that he is just another jailhouse informant seeking favors.[5]  Similarly, the impact of this new information, which links both former LAPD officer David Mack and former LAPD officer Rafael Perez with the Wallace murder, could be of great significance to the plaintiffs.

■  Among the factors the Court is to consider in choosing among possible sanctions is a desire to restore the prejudiced parties to the same position they would have been in absent the wrongful concealment of evidence.  *Nat'l Hockey League v. Metro. Hockey Club, Inc.,* 427 U.S. 639, 643, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976).  The defense has not suggested, nor has the Court devised, any evidentiary or other sanction which would undo the harm to plaintiffs at this juncture.  Plaintiffs made an opening statement and questioned numerous witnesses before this jury, ignorant of the considerable volume of potential evidence being secreted in a detective's desk drawer.  The jury has been adjourned for over a week, and plaintiffs have still further discovery to undertake.  The possibility of completing the trial within the time estimate originally given to the jurors is now remote.

Courts are also instructed, in choosing a sanction, to consider whether the misconduct was purposeful or inadvertent.  Although Detective Katz testified in a recent deposition that he forgot that the material was in his desk, the statement is utterly unbelievable.  The Detective, acting alone or in concert with others, made a decision to conceal from the plaintiffs in this case information which could have supported their contention that David Mack was responsible for the Wallace murder.

---

**2.**  Defendant's contention, in its Opposition to the Mistrial Motion, that there has been no violation of Rule 37, since defendant corrected the erroneous discovery responses last week, is not worthy of comment.

**3.**  Some of the items have not yet been turned over to plaintiffs, but plaintiffs are aware of their existence through information contained in other just-disclosed documents.

**4.**  The absence of the TEAMS report from Mack's personnel file is significant.  The Court is advised that such a report would provide a chronol-

ogy of all personnel complaint investigations in Mack's file.  Now that the report has been turned over, it demonstrates that approximately 15 such investigations are also missing from the file.

**5.**  Of course, even if the witness were utterly incredible, it would never justify failing to disclose this evidence to the plaintiffs.  A party's obligation in responding to discovery is not to pick and choose which items of evidence it believes will be most valuable to the opposing side.

166

The Court is satisfied that no lesser sanction will restore plaintiffs to the position they would have been in had the misconduct not occurred.

### Attorneys' Fees

Plaintiffs are entitled to an award of attorneys' fees and costs as a sanction. The fees to be awarded will reflect fees and costs incurred as a result of defendants' misconduct. The parties are directed to file a Fee Application and Responsive documents concerning the appropriate amount of such award.

### Conclusion

Plaintiffs' Motion for Mistrial is Granted. The matter is restored to pre-trial status. Plaintiffs' Request for Attorneys' Fees as a sanction is granted, subject to proof.