**Richard A. PETERSON, Plaintiff,**
v.
**TERMINAL TAXI, INC., John Diaz and Miriam Hayes, Defendants.**

**No. 65 Civ. 3138.**

United States District Court
S. D. New York.

Nov. 13, 1968.

David B. Ampel, New York City, for plaintiff, Berger & Peters, Brooklyn, N. Y., of counsel.

Herbert Zelenko, New York City, for defendants Terminal Taxi, Inc. and John

Diaz, Benjamin Rubinfeld, New York City, of counsel.

Julius Diamond, New York City, for defendant Miriam Hayes, Thomas P. Costello, New York City, of counsel.

## OPINION

MacMAHON, District Judge.

Plaintiff moves under Rule 60(b), Fed.R.Civ.P., to vacate and set aside a judgment entered against him and to restore his case to the calendar. The complaint was dismissed for failure to prosecute because plaintiff did not appear when the case was called for trial.

The complaint asserts a claim for damages for personal injuries allegedly sustained in a collision while plaintiff was riding as a passenger in defendant Terminal's taxicab. The action was commenced on October 19, 1965 and, upon certification by counsel that the action was in all respects ready for trial, was placed on the trial calendar on October 25, 1966 and moved to the ready calendar on January 23, 1968. It was assigned to us for trial, along with 24 other cases, on May 20, 1968. Commencing on May 28, 1968 it appeared in the New York Law Journal as No. 15 on our trial list of 24 cases, accompanied by notice that the cases would be tried one to follow the other in the order listed.

The deputy clerk of the court first telephoned counsel on June 3, 1968 and alerted them to be ready for trial at any time because it was impossible to predict when the cases ahead of this one would be terminated due to the fact that any or all of them might settle or be tried in far less than the time estimated by counsel. Counsel were instructed to watch the Law Journal for the progress of their case toward the top of the list.

Counsel in this case requested a conference with the court for the purpose of discussing settlement, and the conference was held on June 6, 1968 but to no avail. We directed counsel at that time to be prepared to proceed to trial at any time thereafter.

The deputy clerk, at our direction, again telephoned counsel on June 11, alerting them that this case would probably be reached for trial on June 12 or, if not then, very shortly thereafter. Finally, on June 14, at approximately 2:15 P.M., the deputy clerk again telephoned counsel and informed them that the case would definitely be reached for trial on June 17, at 10:00 A.M.

Counsel for defendants appeared with his witnesses at the appointed time. Neither plaintiff nor his counsel was present when the case was called at 10:00 A.M. After waiting a half hour, we directed the deputy clerk to telephone David Ampel, Esq., plaintiff's attorney of record. The deputy clerk called and, upon being informed that Mr. Ampel was engaged in another court, then telephoned Fred Peters, Esq., plaintiff's designated trial counsel, but was advised by Mr. Peters' office that Mr. Ampel was supposed to appear. Finally, the deputy clerk's chase produced Seymour Berger, Esq., apparently a partner of Mr. Peters. Mr. Berger appeared at 11:00 A.M. and applied for an adjournment because he was unable to locate the plaintiff. We denied the application and granted the defendants' motion to dismiss the complaint for failure to prosecute.

■ The affidavits of plaintiff and his counsel, submitted on this motion, are palpably insufficient. Plaintiff seeks to justify his non-appearance on the morning of trial by asserting that he was required to go to St. Louis, Missouri on some unspecified "emergency" business. Arriving there, he claims to have become "ill and incapacitated with a severe gastric condition" which kept him "bedridden Friday night and all day on Saturday." He claims that he tried to call Mr. Ampel on Sunday but

received no answer. Mr. Ampel explains that he was away on Sunday celebrating his anniversary, but that when he tried to call plaintiff, he also received no answer because plaintiff's wife was away. Despite his illness, on Monday morning, June 17, plaintiff flew from St. Louis to New York, where he arrived at 11:00 A.M. He immediately called Mr. Ampel's office and was directed by an unnamed secretary to proceed to the courthouse. He claims to have arrived in the courthouse about noon. According to Mr. Berger, the deputy clerk was informed of plaintiff's arrival in New York by a still unnamed secretary.

It is too clear for argument that, if we are to make any progress with the congested calendars of this court, these lame excuses for failure to appear must be rejected out of hand. The rank hearsay that an unidentified secretary advised the clerk that plaintiff had arrived in New York conflicts with our recollection that no calls were made by the deputy clerk after 10:45 A.M., and, in any event, plaintiff was required to be in court at 10:00 A.M. and not at the airport at 11:00 A.M.

Wholly apart from his vague emergency trip and his unsubstantiated illness, it is utterly implausible that a plaintiff, properly advised by counsel and mindful of his own interest, would leave town knowing full well that his trial was imminent without first consulting with counsel and arranging for a definite line of communication with his counsel. Moreover, it is inconceivable that counsel would allow his client to leave town in the circumstances without first obtaining permission from the court.

At best, plaintiff and his counsel have nothing but their own negligence to blame for the dismissal of the action for failure to prosecute. At worst, it would appear that both of them took a calculated risk.

█ Plaintiff asserts that he "did not anticipate that the trial would actually take place on June 17, 1968 because of the anticlimactic day to day uncertainties of when this trial was to take place." Surely, plaintiff has no one to blame but himself if he fails to heed the clear notice of the court. Uncertainties as to time of trial are inherent in the nature of litigation. If trials are scheduled for days certain and, as is often the case, some settle without trial, jury panels wait in idleness and judges assigned to the trial part are shunted to other tasks. The result is stagnation of the calendar and ultimately massive congestion. We therefore, in our effort to move the calendar, schedule trials one to follow the other, making sure that counsel are given as much notice as possible on the progress of the cases ahead of them and the likely time for trial. That is all that is required under the rules which provide that when the trial part is about to be disengaged, the deputy clerk for calendars shall notify the attorneys of record in the next cause by telephone to report in a designated trial part in such manner that they will have reasonable opportunity to reach the courtroom in time. The responsibility for the appearance of attorneys, parties and witnesses in court, ready to proceed to trial, is on the attorneys of record and not on the court or deputy clerk for calendars. Calendar Rule 8(b).

There were 11,244 civil cases on the dockets of this court when this case was scheduled for trial. At present, there are over 11,500. In addition, there are presently about 1,500 criminal cases. Confronted with these facts, the court must look, in the impartial administration of justice, to all of the cases in the courthouse and not just to the one directly affected by dismissal.

█ If plaintiff's case is reinstated and restored to the calendar on the incredible excuses advanced here, then no case can be dismissed for failure to prosecute. Moreover, it would only mean that others more eager for their day in court

are left in a stationary line. We are not unmindful that dismissal is a harsh remedy. Schwarz v. United States, 384 F.2d 833, 836 (2d Cir. 1967). We avoid using it wherever possible. Schneider v. American Export Lines, Inc., 293 F. Supp. 117, S.D.N.Y., Aug. 20, 1968.

This plainly appears to be a case where plaintiff's counsel have taken on more business than they can properly handle, as is demonstrated by their failure to set up a line of communication between them and their client, not to mention their failure to appear in court when the case was called for trial after all the notice they received here. It would be hard to imagine a clearer case of negligence. Likewise, plaintiff's leaving town knowing that his case would be reached for trial, without consulting his lawyer and without the court's permission, is utterly inexcusable. Surely, he cannot expect us to close our doors until it suits his convenience to proceed to trial. In short, both plaintiff and his counsel were palpably at fault and must suffer the consequences. It would make a mockery of justice if the hardships and expenses attendant upon another trial were visited upon the defendants, and other deserving litigants were delayed in attaining their day in court.

■ Rules and the direction of the court are meant to be followed. See Davis v. United Fruit Co., 402 F.2d 328, 2d Cir., Oct. 3, 1968. If counsel and litigants observe the rules and heed the directions of the court, perhaps we will make progress toward the ideal of current calendars. That goal will never be reached if we allow counsel and litigants to trifle with the rules and the court's directions, as was so plainly the case here.

Accordingly, the motion to vacate the judgment and restore this action to the calendar is denied.

So ordered.