Margaret V. QUAGLIANO, individually
and as mother and natural guardian of
Michele L. Quagliano, Plaintiffs,

v.

The UNITED STATES of America and
Maria Vito and Edward A. Vito,
Defendants.

No. 65 Civ. 3412.

United States District Court
S. D. New York.

Nov. 27, 1968.

Minnie Warshaw and Donald S. Sherwood, New York City, for plaintiffs.

Robert M. Morgenthau, U. S. Atty., Southern District of New York, New York City, for the United States; Brian J. Gallagher, Asst. U. S. Atty, of counsel.

Richard R. Reigi, Staten Island, N. Y., for Maria Vito and Edward A. Vito.

OPINION

MacMAHON, District Judge.

Plaintiffs move under Rule 60(b) (6), Fed.R.Civ.P., to vacate and set aside a judgment entered against them for failure to prosecute. Rule 41(b), Fed.R.Civ. P. Defendants Maria Vito and Edward A. Vito cross-move for interest on the proceeds of the National Service Life Insurance policy which was the subject of this action. We will consider the motions in order.

This action was instituted on November 12, 1965. Plaintiffs, wife and child

of decedent Michael Quagliano and originally the beneficiaries of two National Service Life Insurance policies issued on decedent's life, claim the proceeds of the policies. 38 U.S.C. § 784. They allege that defendants Maria and Edward Vito coerced decedent to change beneficiaries from plaintiffs to themselves and that decedent did not have testamentary capacity at the time of the change of beneficiaries.

On October 19, 1966, this action was placed on the trial calendar. It was assigned to us on May 20, 1968 for trial in June. We were unable to reach the trial of the case at that time and returned it to the calendar on June 24, 1968.

On October 10, 1968, the case was called for a settlement conference before Judge Pollack. When that conference concluded without settlement, the case was again assigned to us for trial forthwith.

Commencing on October 14, 1968, the case appeared in the New York Law Journal as number 11 on our list of cases, with the notation that cases would be tried one to follow the other in the order listed. In addition, the deputy clerk of the court informed counsel by telephone that they should be ready to proceed to trial when reached and to watch the Law Journal to note the progress of their case toward the top of the list as cases ahead of theirs were concluded. The Law Journal, however, cannot keep pace with the movement of the calendar because it is not at all unusual for four or five cases to settle after the Law Journal's publication deadline. Our courtroom deputy clerk, therefore, calls counsel from the robing room, at our direction, as soon as we are able to know when the case on trial is likely to finish and when the next case is likely to be reached. These subsequent calls are not required by the rules but are simply a courtesy extended to counsel. The responsibility for watching the progress of the trial calendar and of being ready to proceed when reached is on counsel and not on the clerk or the court. Calendar Rule 8(b).

Accordingly, four days after the original notification by telephone, the clerk again called counsel on Friday, October 18, 1968, and alerted them to the likelihood that this case would be reached for trial on Monday, October 21, or Tuesday, October 22. Trial of the case ahead took a little longer than planned, and on Monday, the clerk called a third time and informed counsel that this case would definitely be tried on Tuesday afternoon, October 22. Finally, the clerk called on Tuesday morning to confirm that the trial of this case would commence at 2:15 that afternoon.

Neither Miss Warshaw nor Mr. Sherwood, counsel for plaintiffs, appeared for trial at the appointed time. Instead, Allen Dick of their office appeared and requested a continuance because the decedent's health records from the United States Public Health Service Hospital, said to be of crucial importance to plaintiffs' case, had arrived only that morning and because plaintiffs' medical expert was on vacation.

Mr. Dick stated that the medical records had been ordered six months or a year ago, but plaintiffs' counsel never requested a court order for the production of the records in advance of trial. Counsel's tardiness in obtaining the medical records, especially in light of the prior assignment for trial in June 1968, is inexcusable. Counsel's complacency is shown also by the fact that they were not aware that their medical expert was vacationing until the morning of trial. These excuses were palpably unacceptable. We, therefore, denied plaintiffs' application for a continuance and directed counsel to proceed to trial.

Mr. Dick then informed the court that he "was not the counsel in this case," was unable to try it, and that he had been sent by plaintiffs' counsel for the sole purpose of requesting a continuance. We denied the application, and on defendants' motion dismissed the action for failure to prosecute.

Miss Warshaw now asserts that the deputy clerk did not give her a definite trial time until Tuesday morning, Octo-

ber 22, 1968, and contends that under the Calendar Rules of this court the case could not be tried until 24 hours after telephonic notice.

■ We have no doubt counsel received telephone notice from the deputy clerk on Monday, October 21, that the case would definitely be tried on Tuesday afternoon, October 22, because the clerk gave that notice at our direction from the bench. Even if he did not give counsel notice until Tuesday morning, as Miss Warshaw claims, plaintiffs' argument must still be rejected. Counsel were on notice from the outset that all cases on our trial list would be tried one to follow the other. They were not assigned for a day certain because we find that practice a clog on the movement of the calendar. Counsel's reliance on the 24-hour rule is misplaced. That rule applies only on the movement of a case from the ready day calendar to a judge's trial calendar. Calendar Rule 7(b) (1). Once a case is assigned to a judge for trial, however, counsel and the parties are entitled only to such notice as will afford them a "reasonable opportunity to reach" the court. Calendar Rule 8(b).

The clerk more than complied with the requirements of the rules and gave counsel abundant notice of trial. Our giving counsel more notice than the rules require was simply a courtesy. If counsel fail to avail themselves of this courtesy and fail to arrive at the appointed time ready for trial, we will be forced to the distasteful alternative of directing counsel, the parties and their witnesses, after assignment for trial, to wait in the Court House until we are ready to hear their case.[1]

Counsel's failure to be ready to proceed, despite the notice given here, shows a complete disregard for the rules of this court, imposes on the time of judges and jury panels, and burdens the pocketbook of taxpayers. Worse, it results in gaps and delays in our trial calendar. Such delays cannot be tolerated in this congested court.

When this case was originally called for trial, there were 11,584 civil cases on the dockets of this court and over 2,600 cases on its trial calendars. There were also approximately 1,500 criminal cases pending. The normal civil case now takes almost four years from commencement to disposition and must wait 38 months from joinder of issue until trial.[2]

■ Faced with these alarming statistics, if counsel is not ready to proceed to trial at the appointed time and unable to give an adequate explanation for failure to be ready to proceed, as is so plainly the case here, then we have no choice but to dismiss. Calendar Rule 16(b); Peterson v. Terminal Taxi, Inc., 45 F.R.D. 349 (S.D.N.Y.1968).

■ We are mindful that this is a harsh sanction. Schwarz v. United States, 384 F.2d 833, 836 (2d Cir. 1967). We must, however, look not just to the impact of our decision on the administration of justice in this case, but to all the cases in the Court House. The sanction is necessary if the thousands of other litigants are to have their day in court and if the rules and directions of the court are ever to be followed. See Davis v. United Fruit Co., 402 F.2d 328, (2d Cir., 1968). Strict compliance with the rules is necessary if we are to achieve our goal of current calendars. We are not unmindful that our sanction may be harsh to the plaintiffs. Plaintiffs, however, are not without a remedy. Where "an attorney's conduct falls substantially below what is reasonable under the circumstances, the client's remedy is against the attorney in a suit for malpractice." Link v. Wabash R. R., 370 U.S. 626, 634 n. 10, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734 (1962).

---

1. This extreme step was taken by the District Court for the Eastern District of Pennsylvania in a recent attempt to clean up its backlog. Comment, 13 Vill. L.Rev. 137 (1967).

2. Hearings Before the Subcommittee on Improvements in Judicial Machinery of the Senate Committee on the Judiciary, 90th Cong., 2d Sess., p. 20 (1968).

Defendants Maria and Edward Vito cross-move for interest on the proceeds of the policy from the date of decedent's death until present. Interest and costs, however, are not recoverable in an action on a government insurance policy. 38 U.S.C. § 784(g); United States v. Worley, 281 U.S. 339, 50 S.Ct. 291, 74 L.Ed. 887 (1930); Barnes v. United States, 95 F.Supp. 541 (W.D.Pa. 1951).

Accordingly, plaintiffs' motion to vacate the judgment is denied, and defendants Maria and Edward Vito's cross-motion for interest on the proceeds of the policy is denied.

So ordered.