**DYOTHERM CORPORATION**

v.

**TURBO MACHINE COMPANY.**

Civ. A. No. 31984.

United States District Court
E. D. Pennsylvania.

Dec. 23, 1969.

Norman N. Schiff, Norman D. Weisburd, Newark, N. J., for plaintiff.

Paul & Paul, Henry N. Paul, Jr., Robert B. Frailey, Stuart S. Bowie, Philadelphia, Pa., for defendant.

## OPINION AND ORDER

HANNUM, District Judge.

This is a motion for dismissal by the defendant, Turbo Machine Company (hereinafter "Turbo"), pursuant to Fed.R.Civ.P. 41(b). The historical background of this case prior to remand is set forth in 392 F.2d 146 (3rd Cir. 1967), therefore this court finds it unnecessary to now repeat those facts and will only recite those pertinent facts occurring subsequent to remand.

On March 14, 1968, the Court of Appeals, in the above cited opinion, reversed Judge Kirkpatrick's order rendering absolute his judgment of dismissal, stating at page 149:

> "But the price for these derelictions has been exacted; counsel has been held in contempt and fined, and Dyotherm is required to pay a substantial amount to obtain relief from the order of dismissal."

The "order of dismissal" is paper No. 26 in this case, the same being Judge Kirkpatrick's order of March 16, 1966. In that order, Judge Kirkpatrick ruled, *inter alia:*

> "(2) The Judgement against plaintiff for want of prosecution is to be

vacated upon payment by plaintiff to defendant One Thousand One Hundred and Eighty Five Dollars ($1,185.00) * * * said sum being that awarded pursuant to the hearing in Chambers on February 25, 1966."

At no time, since the Court of Appeals rendered its opinion, and prior to the hearing on this motion has Dyotherm tendered payment of the foregoing sum, or any part thereof, to Turbo, nor has Dyotherm offered any excuse for its failure to do so.

Promptly following the Court of Appeals' decision, Turbo's counsel wrote Judge Kirkpatrick suggesting that a pre-trial conference be held "at the earliest convenient time" in order to prepare the case for trial. Judge Kirkpatrick conferred with counsel in chambers on May 24, 1968. At that time, the Judge announced that he was withdrawing from the case, and would arrange for Chief Judge Clary to assign the case to another Judge.

On August 6, 1968, Judge Clary attempted to arrange a conference with counsel. However, it was postponed at the request of Dyotherm's counsel. Dyotherm thereafter never sought to rearrange such a conference.

Beginning in October 1968, and repeatedly thereafter, Turbo's counsel requested a conference for the purpose of assigning this case to trial. However, such a conference was never held.

During the past 18 months, since the Court of Appeals rendered its decision, Dyotherm has taken no steps to vacate the judgment of dismissal, or otherwise reinstate its complaint. All during the period that Turbo's counsel requested a conference, both Dyotherm and its counsel remained both idle and silent. Dyotherm made no attempt, during those 18 months, to pay even part of the sum called for in Judge Kirkpatrick's order of March 16, 1966, nor has it attempted to have that order amended or the requirement of payment rescinded or modified. It has offered no explanation for such failures.

In opposition to Turbo's presently pending motion, Dyotherm has filed two affidavits, one by its counsel Norman N. Schiff and the other by Manuel H. Lihn. Neither affidavit explains why Dyotherm has taken no steps to reinstate its case, nor sought relief from Judge Kirkpatrick's order of March 16, 1966. Neither affidavit explains why Dyotherm has been content, for the past 18 months, to permit this case to remain dormant.

All that the Schiff and Lihn affidavits do is allege that, because of Lihn's "financial status," Dyotherm has been unable to pay to Turbo the $1,185.00 called for in Judge Kirkpatrick's order. But no evidence is submitted in support of such allegation. Dyotherm has not advanced the case one step beyond its posture on August 11, 1966—over three years ago—when Dyotherm's counsel first asserted that the failure to pay was the result of Mr. Lihn's financial situation.[1]

When Dyotherm's counsel previously raised the question of Lihn's financial condition, Judge Kirkpatrick acknowledged its relevance, but requested Dyotherm's counsel to submit proof thereof. It was only after Dyotherm ignored this request that Judge Kirkpatrick finally granted Turbo's motion to render absolute the judgment of dismissal.[2]

During the course of the proceedings before this Court on October 6, 1969, the question arose as to whether Mr. Lihn had fulfilled his obligation contained in his affidavit of August 26, 1969, paragraph 4, wherein he stated:

"I will be able to pay the balance of $685.00 within thirty (30) days from today's date as I will be receiving a

1. See paper No. 29, transcript of August 11, 1966, pages 16–18, 25–27.

2. See paper No. 30, Judge Kirkpatrick's opinion of October 25, 1966, Pages 2–3.

payment from a recent aircraft sale that I was able to effect."

The Court was informed that Mr. Lihn did not pay this sum within the thirty (30) days as he had promised. In fact, counsel for the plaintiff could not state with certainty whether he had received this sum as of the morning on which this present motion was argued.

Thus, Dyotherm's position today is even worse than its position of three years ago. While still claiming Mr. Lihn's alleged financial hardship as its reason for noncompliance with Judge Kirkpatrick's order of March 16, 1966, Dyotherm continues to refuse to submit evidence in support of such assertion. While swearing before this Court that he would pay the balance of his obligation within thirty (30) days of the date of his affidavit, Mr. Lihn failed to keep such promise.

■ In any litigation, the plaintiff is under a duty "to use diligence and to expedite his case to a final determination." Sweeney v. Anderson, 129 F.2d 756, 758 (10th Cir. 1942). Hicks v. Bekins Moving & Storage Co., 115 F.2d 406, 409 (9th Cir. 1940).

■ Rule 41(b) of the Federal Rules of Civil Procedure authorizes the District Court to dismiss a complaint for lack of prosecution by the plaintiff. The purpose of the rule is to prevent undue delays in the disposition of pending litigation, and to avoid congestion of Court calendars. Link v. Wabash Railroad Co., 370 U.S. 626, 629–630, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962). Barger v. Baltimore & Ohio Railroad Co., 75 U.S. App.D.C. 367, 130 F.2d 401, 402 (1942).

■■ The power to dismiss a complaint under Rule 41(b) for failure to prosecute lies in the sound discretion of the Trial Court. The element necessary to justify dismissal for failure to prosecute is lack of diligence on the part of the plaintiff. See Janousek v. French, 287 F.2d 616, 620–621 (8th Cir. 1961) and authorities cited.

■ The record here clearly establishes Dyotherm's complete failure to exercise diligence in the prosecution of its case. Repeatedly, it has sought to delay the trial. As Judge Kirkpatrick pointed out in his opinion dated October 25, 1966, pg. 2:

"This case has a history of repeated delays, unfulfilled assurances made to the Court, and disregard of Court orders and the rules on the part of the plaintiff."

The record also discloses that Judge Kirkpatrick exercised extreme patience with Dyotherm, notwithstanding its contumacy and dilatory tactics. The Court extended to Dyotherm repeated opportunities to atone for its misbehavior, and to bring its case on for trial. But Dyotherm has disdained, and continues to disdain, taking advantage of such opportunities. To this day it persists in its dilatory tactics.

Thus, during the 18 months which have elapsed since the decision of the Court of Appeals, Dyotherm has done absolutely nothing to resume prosecution of this case.

In Thorn v. Harrisburg Trust Company, 32 F.R.D. 352, 355 (M.D.Pa.1962); aff'd per curiam 316 F.2d 237 (3rd Cir. 1963), where the plaintiffs also had taken no steps to prosecute the action, the court dismissed the complaint stating;

"Having in mind that * * * the entire history of this attempted litigation has been one of inexcusable delay and complete disregard for this Court, I feel that there is not only complete justification for dismissing the suit but for dismissing it without leave to amend."

It is clear, therefore, that dismissal for want of prosecution is appropriate in a case such as this, where there has been no substantial effort to prosecute the case after being given every reasonable opportunity to do so. Kenney v. California Tanker Company, 381 F.2d 775 (3rd Cir. 1967); Agronofsky v.

Pennsylvania Greyhound Lines, 248 F.2d 829 (3rd Cir. 1957); Bendix Aviation Corporation v. Glass, 32 F.R.D. 375 (E. D.Pa.1961), aff'd per curiam, 314 F.2d 944 (3rd Cir. 1963).

The complaint in this case was dismissed for want of prosecution on October 5, 1965—nearly four years ago. Judge Kirkpatrick's order of March 16, 1966 extended to Dyotherm the privilege of facating the dismissal, upon payment to Turbo of the sum of $1,185.00. This sum has never been paid. The final judgment entered by Judge Kirkpatrick of November 23, 1966, rendered absolute the order of dismissal. It was entered because of Dyotherm's lack of diligence of prosecution, including particularly its failure to pay the $1,185.00.

The decision of the Court of Appeals on March 14, 1968, although reversing Judge Kirkpatrick's final judgment of November 23, 1966, did not automatically reinstate the action, but noted that Dyotherm had to pay a substantial sum to obtain relief from the order of dismissal.

Therefore, Dyotherm's complaint remains in a dismissed status. For 18 months, Dyotherm has made no attempt to comply with the condition laid down by the Court of Appeals, when it reversed the final judgment in this case. Dyotherm's failure in this regard comprises a complete lack of diligence in meeting its obligation "to expedite the case to a final determination".

It is worthwhile to note that on October 9, 1969, being faced with the prospect of final dismissal, plaintiff's counsel did, in fact, make a tender of the appropriate sum which counsel had by this time received from Mr. Lihn. This was returned by the defendant stating its position that since this Court presently had under advisement the defendant's pending motion to dismiss, to accept such tender would be inappropriate. In this the defendant is correct. But even if that were not so, a delay such as exists here in meeting a condition of this kind was clearly inexcusable and tantamount to a default.

■ Following the hearing on the present motion, the Court received from defendant's counsel a document indicating that plaintiff's charter was voided for non-payment of state taxes on February 5, 1962, more than six months before the complaint was filed. In the first paragraph of its complaint, plaintiff averred that it is a corporation organized and existing under the laws of the State of New Jersey. Plaintiff's counsel, however, referred to the fact that under the laws of the State of New Jersey a dissolved corporation may still sue in its corporate name as if dissolution had not occurred. N.J.Rev.Stat. § 14A:12–9(2) (e), N.J.S.A. The Court, therefore, concludes that the voiding of plaintiff's charter for non-payment of state taxes prior to the commencement of this action does not divest the diversity jurisdiction of the Court.

On the basis of the foregoing reasons, the order of March 16, 1966, dismissing Dyotherm's complaint for lack of prosecution is made final and absolute, and costs of the action are awarded to Turbo.

### ORDER

And now, this 23rd day of December, 1969, it is hereby ordered:

1—That the complaint is dismissed, as to all counts, with prejudice, and that defendant shall have and recover from plaintiff its costs in the action; and

2—that the issues of defendant's counterclaim for declaratory judgment having become moot by reason of the dismissal of the complaint, said counterclaim is dismissed without prejudice.