960 F.2d 156
 NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
MIU AUTOMATION CORPORATION, Plaintiff-Appellant,
v.
IBM CORPORATION, Defendant-Appellee.
 No. 91-1493.
 United States Court of Appeals, Federal Circuit.
 March 13, 1992.
 
 Before RICH, MAYER and CLEVENGER, Circuit Judges.
 
 DECISION
 
 1
 MIU Automation Corporation (MIU) appeals from the orders entered January 24, April 18, and July 31, 1991, by the United States District Court for the Central District of California (Davies, J.), in Case No. CV 90-0404, imposing sanctions against MIU, denying MIU's motion to disqualify the presiding judge, and naming IBM as the prevailing party, respectively. We affirm.
 
 DISCUSSION
 1. Background
 
 2
 MIU is assignee of U.S. Patent No. 4,797,928 ('928 patent), titled "Encryption Printed Circuit Board." After viewing IBM's "4755 Cryptographic Adaptor" product at a tradeshow, MIU filed suit against IBM on January 26, 1990, alleging infringement of the '928 patent thereby. IBM counterclaimed for a declaratory judgment of noninfringement, invalidity, and unenforceability of the '928 patent.
 
 
 3
 After suit had been filed, three different lawfirms undertook and subsequently were granted leave to withdraw from representation of MIU, citing MIU's refusal to cooperate with counsel and to pay counsel fees. (This court has denied a motion to withdraw by a fourth firm, which represents MIU in this appeal). Citing litigation costs, MIU on December 20, 1990 moved, inter alia, to dismiss its complaint against IBM with prejudice. In the order entered January 24, 1991, the district court granted that portion of MIU's motion. On May 22, 1991, the district court granted MIU's motion for summary judgment, dismissing IBM's declaratory judgment counterclaim without prejudice due to the absence of a justiciable case or controversy, following MIU's stipulation that no IBM product in existence infringed the '928 patent.
 
 2. Sanctions
 
 4
 In its January 24, 1991 order, the district court also granted IBM's motion for sanctions in the form of attorney fees and costs, based upon MIU's dilatory tactics. The court set forth a three-page discussion of the events leading to its award of sanctions, including MIU's tenuous relationships with counsel and its delay tactics in producing witnesses for deposition. The district court then concluded:
 
 
 5
 In little under a year since filing this action MIU has been represented by four different sets of counsel. The inability of MIU to establish a long term relationship with counsel has culminated in needless expense and delay for both IBM and this Court. While each action alone may not indicate intentional obstruction, pieced together, the record establishes a history of dilatory and uncooperative behavior by MIU.
 
 
 6
 The district court awarded IBM $46,358, approximately 60% of the total amount requested, in attorney fees and costs associated with IBM efforts to (1) conduct depositions of MIU witnesses, and (2) prepare motions to dismiss after withdrawals of MIU's attorneys.
 
 
 7
 MIU contends on appeal that the district court's award of sanctions constituted an abuse of discretion. MIU's primary argument in this regard is that the district court improperly based its decision on the "cumulative effect" of MIU's actions, after finding (MIU contends) that individual events did not indicate intentional obstruction by MIU. In support of its position, MIU relies upon In re Yagman, 796 F.2d 1165 (9th Cir.), amended, 803 F.2d 1085 (9th Cir.1986), cert. denied, 484 U.S. 963 (1987), wherein the appeals court reversed a $250,000 sanction imposed against an attorney for what was "essentially an accumulation of all perceived misconduct, from filing through trial, with a reevaluated determination that it was far more serious than appeared at the time." Yagman, 796 F.2d at 1183.
 
 
 8
 Yagman does not persuade us that the district court herein abused its discretion. MIU fails to recognize the Yagman court's concern with the lack of contemporaneous notice or warning to the attorney that he risked sanctioning for repeated misconduct. Id. at 1183-84. Although as MIU contends, the district court in this case had on earlier occasions refused to sanction MIU, we note that at each of these instances the district court clearly put MIU on notice of the risk of further dilatory conduct and failures to "get serious" about the case. Moreover, the district court's award of sanctions at the time of dismissal of the case is in keeping with the Yagman court's statement that
 
 
 9
 we do not condemn as inappropriate in all cases the procedure of withholding the sanctions decision until the end of trial. In some situations, liability under proper sanctioning authority will not be immediately apparent or may not be precisely and accurately discernible until a later time.
 
 
 10
 Id. at 1183.
 
 
 11
 MIU also contends that the district court failed to analyze the reasonableness of the amount of fees requested by IBM, and that IBM's submissions were of insufficient detail. We disagree. The evidence on fees was plentiful and specific, and the connection between the sanctioned conduct and the amounts awarded is clear. The award was well within the district court's discretion.
 
 
 12
 3. "Prevailing Party"
 
 
 13
 The district court by its order entered July 31, 1991 amended its June 27, 1991 judgment to name IBM as the prevailing party, thereby entitling IBM to an award of costs under Fed.R.Civ.P. 54(d) and applicable local rules. MIU contends here that the court erred in so doing because IBM did not "prevail" on the merits of any issue; instead, MIU argues, MIU stipulated to noninfringement solely because it could not afford to continue to litigate against IBM.
 
 
 14
 We see no error in the district court's determination that IBM was the "prevailing party." Though infringement was not tried in this case, there was a judicial determination on the issue, resulting in a dismissal of MIU's complaint with prejudice. As this court has previously explained,
 
 
 15
 Ascertaining the "prevailing party" requires us to "look to the substance of the litigation to determine whether an applicant has substantially prevailed in its position, and not merely the technical disposition of the case or motion. In effect, substance should prevail over form."
 
 
 16
 Schultz v. United States, 918 F.2d 164, 166 (Fed.Cir.1990) (quoting Devine v. Sutermeister, 733 F.2d 892, 898 (Fed.Cir.1984)), cert. denied, --- U.S. ----, 111 S.Ct. 1686 (1991). As the district court found, IBM prevailed on virtually all issues present in this action. The district court did not err in naming IBM the "prevailing party."
 
 4. Disqualification Motion
 
 17
 MIU moved on March 4, 1991 to disqualify Judge Davies from further proceedings on the ground that counsel for IBM, the Los Angeles firm of O'Melveny & Myers, had previously represented a group of lawyers which included Judge Davies in a partnership dissolution matter, prior to Judge Davies' nomination to the federal bench. In his order of April 24, 1991, Judge Kenyon (randomly selected to rule on the motion to disqualify Judge Davies) found that "[t]he uncontested evidence establishes that IBM revealed O'Melveny & Myers past representation of Judge Davies to MIU's first counsel on February 13, 1990. It is therefore from this point that timeliness must be measured." Judge Kenyon further found that the representation of Judge Davies had been duly disclosed to each succeeding counsel for MIU. Under Ninth Circuit law, Judge Kenyon explained, motions to disqualify or recuse a judge must be made "in a timely fashion." Since MIU's disqualification motion was filed more than one year after its first counsel learned of the prior representation, Judge Kenyon dismissed the motion as untimely.
 
 
 18
 MIU contends here that its disqualification motion was timely, because its present counsel (number four) only learned of the representation on November 29, 1990, at which time it conveyed the information to MIU's Chairman and Chief Executive Officer, the person "in charge" of the litigation against IBM, who had not previously known of the representation. We disagree. MIU is bound by the actions (or lack thereof) of its representatives, and its arguments to the contrary are not well taken. Link v. Wabash R.R. Co., 370 U.S. 626, 633-34 (1962). The district court did not err in measuring timeliness from February 13, 1990. The court's determination that MIU's disqualification motion, filed over a year later, was untimely does not constitute an abuse of discretion.