Michael ANTALAN, Plaintiff,

v.

DEGUSSA–HULS CORP., Defendant.

No. 00–CV–1110–BH–M.

United States District Court,
S.D. Alabama,
Southern Division.

May 22, 2002.

Amardo Wesley Pitters, Montgomery, AL, for Plaintiff.

David L. Gordon, Emily S. Blumenthal, Jackson, Lewis, Schnitzler & Krupman, Atlanta, GA, for Defendant.

### ORDER

HAND, Senior District Judge.

This matter is before the Court on Defendant's third motion (Doc. 39) to dismiss for failure to prosecute and two supporting affidavits: the first (Doc. 40) regarding the Defendant's costs associated with the Plaintiff's scheduled deposition and the second (Doc. 42) regarding the Defendant's costs in defending the entire action. For the reasons that follow, the Court finds that (1) the action is **due to be and is hereby DISMISSED WITH PREJUDICE,** and (2) the Defendant, Degussa–Huls Corporation is **due to be AWARDED SANCTIONS in the amount of $12,677.21, against the Plaintiff,** the sanctions amount representing costs incurred in connection with the Plaintiff's Court-ordered deposition.

### I. BACKGROUND[1]

1. In December, 2000 Plaintiff filed this lawsuit alleging that the Defendant engaged in a pattern or practice of race discrimination. (Doc. 1)

2. On February 16, 2001, Degussa, timely filed its answer denying all of Mr. Antalan's claims. (Doc. 5).

3. On April 11, 2001, the Court issued a Rule 16(b) Scheduling Order. (Doc. 11). In accordance with the Rule 16(b) Order, initial disclosures were required to be exchanged by April 20, 2001. More than a month after initial disclosures were due, and after an express request from Degussa's counsel, Mr. Antalan's counsel finally served Plaintiff's initial disclosures on May 29, 2001. (Doc. 14, Exhibit 1) (Degussa's First Motion to Dismiss and Sanction for Failure to Prosecute and Cooperate in Discovery, filed September 7, 2001).

4. On July 18, 2001, Degussa served requests for admission, interrogatories and document requests upon Mr. Antalan through his counsel of record, Amardo Wesley Pitters. *Id.* at Exhibit 2.

5. At the same time, Degussa's counsel proposed to take Mr. Antalan's deposition on August 30, 2001. *Id.* Degussa's counsel specifically asked Mr. Pitters to advise of any conflict with that date on or before July 30, 2001. *Id.* Since Mr. Pitters failed to timely advise Degussa's counsel of any conflict with this date, Degussa's counsel served Mr. Pitters with a notice for Mr. Antalan's deposition on August 3. *Id.* at Exhibit 4. After Degussa served the notice, Mr. Pitters informed Degussa's counsel Mr. Antalan had not confirmed his availability on August 30, and that he was therefore unable to agree to proceed. *Id.* at Exhibit 5.

6. Contemporaneously, Mr. Antalan's written discovery responses were due by August 20, 2001. Mr. Antalan and his counsel neither requested an extension, raised objections, nor produced any response to Degussa's discovery requests by August 20. Degussa's counsel made several efforts to communicate with Mr. Pitters regarding Mr. Antalan's overdue discovery responses and Mr. Antalan's deposition. *See Id.* at Exhibit 6. Rather than respond to Degussa's counsel, Mr. Pitters filed a Motion to withdraw as the Plaintiff's counsel. (Doc. 12).

7. On August 31, 2001, the Court conditionally granted Mr. Pitters's Motion to Withdraw. (Doc. 13). The Court's order provided that Mr. Pitters would remain counsel of record for Mr. Antalan until another attorney filed an appearance on Mr. Antalan's behalf for

---

1. These facts are not disputed.

this case, or until Mr. Antalan filed a signed statement indicating his wish to proceed *pro se* in this matter. Ultimately, however, Mr. Pitters has remained counsel of record for Mr. Antalan without interruption.

8. On September 7, 2001, based on Mr. Antalan's failure to participate in discovery, Degussa filed its First Motion to Dismiss. (Doc. 14). Plaintiff responded twice: his first response (Doc. 16) stated that Mr. Antalan had not been in contact with Mr. Pitters, and asked the Court to give Mr. Antalan more time to respond. His second response (Doc. 19), filed at the beginning of October, stated that (1) Mr. Antalan finally contacted Mr. Pitters, (2) Mr. Antalan had a new address in Texas (where he is attending law school), (3) Mr. Antalan wanted more time to respond to (overdue) discovery requests, and (4) the earliest Mr. Antalan would be available for his deposition would be over his Christmas break in December (though at that point discovery was scheduled to end on December 14, 2001).

9. On October 5, 2001, Based on the Plaintiff's representations, the Court entered an order (Doc. 18) denying Degussa's First Motion to Dismiss, but ordering Mr. Antalan to file, by October 22, 2001, a notice with the Court clarifying his intention to either continue or discontinue the prosecution of this Action. In the order, the Court expressly noted, "this Court and the parties must operate pursuant to the Rule 16(b) Scheduling Order ... and [t]he schedule of this action cannot and will not operate according to the Plaintiff's personal agenda." *Id.*

10. Mr. Antalan failed to comply with the Court's October 5 order. On October 30, 2001, the Court took judicial notice of Mr. Antalan's failure to com-

ply. (Doc. 20). The Court ordered Mr. Antalan to show cause, by November 13, 2001, why this action should not be dismissed for failure to abide by the Court's Orders. *Id.*

11. On November 1, 2001, Degussa filed a Renewed Motion to Dismiss and Sanction For Failure to Prosecute and Cooperate in Discovery. (Doc. 21) (Degussa's Second Motion to Dismiss). On November 9, 2001, on Mr. Antalan's behalf, Mr. Pitters responded (Doc. 23) to Degussa's Second Motion to Dismiss. The response stated that Mr. Pitters and Mr. Antalan had reached an agreement to go forward in this case based on Mr. Antalan's pledge that "he will cooperate in the prosecution of this cause." *Id.* It also stated that Mr. Antalan would submit his (overdue) responses to Degussa's outstanding discovery requests by November 21, "within fourteen days from the filing of this response." *Id.*

12. On November 9, Mr. Pitters also filed the "Plaintiff's Response to Court's Show Cause Order" (Doc. 22), which reiterated the affirmations in Mr. Antalan's response, and explained that Mr. Antalan was preoccupied with his law school studies. *Id.*

13. On November 15, 2001, the Court denied Degussa's Second Motion to Dismiss "[i]n light of the pledges Plaintiff ma[de] in his responses," but noted, "the Court will strictly hold the Plaintiff to his word" (emphasis added), and expressly ordered Mr. Antalan to submit responses to Degussa's written discovery requests on or before Friday, November 23, 2001. (Doc. 24).

14. On Saturday, November 24, 2001, Mr. Antalan submitted answers to Degussa's written discovery requests, without corresponding documents re-

quested, months after the responses were originally due. *See* (Doc. 39, Exhibit A).

15. Stating that Mr. Antalan's answers were substantially unresponsive [2] and detailing the Plaintiff's other failures-to-cooperate in discovery, Degussa moved (Doc. 25) for the Court to amend the Rule 16(b) Scheduling Order to allow additional time for discovery. On December 19, the Court issued an Amended Rule 16(b) Scheduling Order. (Doc. 27). Among other things, the Amended Scheduling Order allowed additional time for discovery through March 1, 2002. *Id.*

16. During the extended discovery period, Degussa attempted to obtain long-overdue discovery it had requested, namely satisfactory responses to its written discovery requests, Mr. Antalan's deposition, and Mr. Antalan's medical information. *See* (Doc. 39, Exhibit B). Mr. Antalan failed to respond to Degussa's inquiries about incomplete written discovery responses and scheduling of his deposition until Sunday, February 24, 2002, at about 8 p.m., when Mr. Antalan's counsel faxed Degussa's counsel a twenty-page communication regarding outstanding discovery issues and enclosing Mr. Antalan's (virtually identical and still unsatisfactory) amended discovery answers. *Id.* at Exhibit C.

17. At that time, Mr. Pitters also unilaterally noticed the deposition of one of Degussa's witnesses, Glenn Serotsky, with only three days advanced notice. *See* (Doc. 39). He also neglected to provide a date for Mr. Antalan's deposition, as requested. *Id.* Indeed, since the beginning of 2002 Degussa repeatedly asked Mr. Pitters to help in scheduling Mr. Antalan's deposition on mutually convenient dates. *Id.* The only two occasions Mr. Antalan has been willing to make himself available for deposition, however, was January 3 or 4, during his winter break from law school, or during the week of March 18, while he was on spring break. *Id.* These dates, however, were not convenient for Degussa's counsel. *Id.*

18. On February 25, 2002, Degussa sought the Court's assistance, among other things, in finally scheduling Mr. Antalan's deposition. (Doc. 29). Magistrate Judge Steele held a discovery teleconference with counsel for the parties on February 26, 2002. *See* (Doc. 39, Exhibit D). Pursuant to the teleconference discussions, the Court issued a Second Amended Rule 16(b) Scheduling Order on February 27, 2002. (Doc. 30). Among other things, the Court again extended the discovery period, through April 12, 2002, and granted Degussa's request for assistance in scheduling Mr. Antalan's deposition, expressly ordering Mr. Antalan's deposition to proceed the week of March 11, 2002. *Id.*

19. Pursuant to the Court's February 27 Order, counsel for the parties conferred about scheduling Mr. Antalan's deposition. (Doc. 39, Exhibit E). On March 4, 2002, Degussa's counsel issued a notice for Mr. Antalan's depo-

---

**2.** Degussa's Third Motion to Dismiss recounts what it argues are the deficiencies in Plaintiff's interrogatory responses and requests for document production. *See* (Doc. 39, pp. 14–28). At the May 16, 2002 hearing, Plaintiff, through his counsel, disputed this argument, stating that, while he might not have provided quite what Degussa wanted, he certainly did not evade the questions. The Court need not probe this issue further, as, even if the Plaintiff's responses were perfect, there is still ample evidence of the Plaintiff's egregious conduct to support today's ruling.

sition to proceed on March 15, 2002, the only date Mr. Pitters ultimately said was available. *Id.* at Exhibit F. About a week before the scheduled deposition, however, on March 7, 2002, Mr. Pitters had his assistant call and write Degussa's counsel with the message that Mr. Antalan's deposition would not likely go forward on March 15 as noticed, as Mr. Pitters's father was seriously ill. *Id.* at Exhibit G. Degussa's counsel promptly tried to reach Mr. Pitters to confirm whether Mr. Antalan's deposition would proceed on March 15, and if not, whether the parties could voluntarily agree on a date to reschedule it within the extended discovery period. *Id.* at Exhibit H. Ultimately, Degussa's counsel heard nothing from Mr. Pitters about Mr. Antalan's Court–Ordered March 15 deposition until the day it was scheduled to proceed, when Mr. Pitters faxed Degussa's counsel a letter stating that Mr. Antalan would not be present for deposition on March 15. *Id.* at Exhibit I.

20. The parties were unable to reschedule the Plaintiff's deposition without the Court's intervention,[3] and so, on April 2, 2002, the Court issued an order (Doc. 34) noting that, among other things, all discovery must be completed by April 12, 2002, and no further extensions of the discovery period would be granted. Thus, on April 4, 2002, Mr. Pitters contacted Degussa's counsel. He advised at that point he would only be available to proceed with Mr. Antalan's deposition on April 11 or 12, 2002. (Doc. 39, Exhibit K). Accordingly, Degussa's

counsel submitted that day a rescheduled notice of deposition for Mr. Antalan for Friday, April 12, 2002. *Id.* at Exhibit L. Later that night, at 9:02 PM central time, Mr. Pitters faxed Degussa's counsel a letter, asking Degussa to conduct Mr. Antalan's deposition by telephone and unilaterally noticing depositions for Mr. Serotsky and a second Degussa witness, Paul Georgas, on April 12, the same day on which Mr. Antalan's deposition was rescheduled to proceed and the last day of the extended discovery period. *Id.* at Exhibit M.

21. On April 9, Degussa's counsel responded to the late-night communications from Mr. Antalan's counsel. *Id.* at Exhibit N. Degussa's counsel stated that it was not agreeable to proceed with Mr. Antalan's deposition by telephone. *Id.* Degussa's counsel agreed to make Mssrs. Serotsky and Georgas available for deposition on Friday, April 12, but only after the completion of Mr. Antalan's deposition, and not late into the night. *Id.* In turn, Mr. Pitters sent Degussa's counsel a fax stating that he would limit the availability of Mr. Antalan for his deposition on April 12 to only three hours and then intended to proceed with the unilaterally scheduled depositions of Mssrs. Serotsky and Georgas for the next five and a half hours. *Id.* at Exhibit O. Because this was completely unacceptable, and because Mr. Pitters hung up on Degussa's counsel when Degussa's counsel attempted to reach him by telephone to discuss these matters, Degussa's

---

**3.** The only time Mr. Antalan offered to make himself available for his rescheduled deposition was during his spring break from law school, the week of March 18–22. As Degussa's counsel communicated to Mr. Pitters, however, the week of March 18 was not a

convenient time to reschedule Mr. Antalan's deposition because Degussa's counsel had longstanding pre-existing commitments to attend five depositions in Harrisburg, Pennsylvania that week in connection with another lawsuit. (Doc. 39, Exhibit J).

counsel again sought the Court's assistance. (Doc. 39).

22. On April 10, 2002, Magistrate Judge Milling, held a teleconference with counsel for the parties regarding outstanding discovery issues. (Doc. 35). There, the Court unequivocally ordered Mr. Antalan's deposition to proceed on April 12, as scheduled, and informed Mr. Antalan that "if he does not appear for the deposition or if he does not fully cooperate in the taking of his deposition ... this action is subject to being dismissed for his failure to cooperate in discovery and for his failure to obey the Orders of this Court." *Id.*

23. On April 12, 2002, pursuant to Court Order, Degussa attempted to proceed with Mr. Antalan's noticed deposition. (Doc. 38). Degussa appeared, ready to take Plaintiff's deposition: it brought its counsel, a court reporter, a videographer, and a corporate representative. (Doc. 40); (Doc. 39, Exhibit P). At the time Mr. Antalan's deposition was scheduled to begin, Mr. Pitters appeared, but Mr. Antalan did not. (Doc. 38).

24. Upon Mr. Pitters's arrival, he served Degussa with a Motion For a Protective Order, filed just a few minutes earlier with the Court. (Doc. 37). The Motion stated that Mr. Antalan decided not to appear in person for his deposition, but that he would be available by telephone, though only until 3 p.m. *Id.* Degussa found this unacceptable, and since it was contrary to the Court's Order (Doc. 35) of April 10, Degussa's counsel again contacted the Court for assistance. (Doc. 38). At the Court's suggestion, Degussa noted on the record Mr. Antalan's failure and refusal to personally appear and cooperate with his deposition. *See* (Doc. 39, Exhibit P).

Counsel for both parties then proceeded to the Courthouse for an in-person hearing with Magistrate Judge Milling. (Doc. 38).

25. During this April 12 hearing with the Court, Degussa orally renewed its motion to dismiss this case with prejudice as a result of Mr. Antalan's continuing willful failure to cooperate in discovery. *Id.* Degussa also made an oral motion for the Court to sanction Mr. Antalan, at a minimum requiring him to reimburse Degussa for the costs and fees associated with his personal failure to appear for his deposition on April 12. *Id.* Rather than rule on Degussa's oral motions at this hearing, the Court asked Degussa to file its (third) motion to dismiss by April 26 and to submit an affidavit detailing costs Degussa incurred in connection with Mr. Antalan's failure to appear on April 12. *Id.;* (Doc. 40). Following this hearing, the Court issued an Order (Doc. 38) on April 12 denying Mr. Antalan's motion for protective order and staying this case pending the Court's consideration of Degussa's present Motion.

26. On April 26, 2002, Degussa filed its third motion (Doc. 39) to dismiss this action for failure to prosecute and for failure to obey the Court's orders. Degussa asked for the Plaintiff to reimburse it for the deposition expenses it incurred, which totaled $12,677.21. *Id.* Degussa attached an affidavit in support of the motion which itemized the expenses. (Doc. 40). Degussa also stated that they would seek reimbursement for their expenses in defending the entire case. *See* (Doc. 39).

27. Rather than possibly forcing itself to decide Degussa's claims for reimbursement sanctions piecemeal, the

Court ordered (Doc. 41) Degussa and Mr. Antalan to appear before it on Thursday, May 16, 2002 to detail the amount Degussa was asking for. Degussa filed an affidavit (Doc. 42) detailing the costs of the defense, which it claims total $63,953.80.

28. The parties appeared on May 16, 2002, and the Court held an off-record hearing. At the hearing, the Plaintiff explained that he missed the Court-ordered deposition because of a law school exam. The Plaintiff once again represented to the Court that he has not lost interest in the case, and intends to continue prosecuting it. The Plaintiff did not dispute that the Defendant's reported deposition costs were accurate, but he did dispute the necessity of a videographer at the deposition. The Plaintiff explained that he was not prepared to challenge the *amount* of the total defense costs, but he did object to the *propriety of the Court's awarding* these costs as sanctions against him.

## II. CONCLUSIONS OF LAW AND ANALYSIS

■ The Defendant moves for dismissal and monetary sanctions, requests which the Court does not consider lightly. Rule 41(b) of the Fed.R.Civ.P. provides for involuntary dismissal with prejudice only for "failure of the plaintiff to prosecute or to comply with these rules or any order of court." Rule 37(b)(2)(C) similarly allows the Court to enter a default judgment against a party for failure to obey a discovery order. While this dismissal power is discretionary and within the Court's "inherent power to police its docket," the Court should dismiss a case only upon a "clear record of delay or willful contempt and a finding that lesser sanctions would not suffice." *Mingo v. Sugar Cane Growers Co-op of Fla.*, 864 F.2d 101, 102 (11th Cir.1989) (vacating and remanding the dis-

trict court's dismissal, where the district court failed to make a finding that lesser sanctions would not have sufficed), *citing Link v. Wabash RR Co.*, 370 U.S. 626, 629–30, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962) *and Goforth v. Owens*, 766 F.2d 1533, 1535 (11th Cir.1985). *See also Gratton v. Great Am. Communications*, 178 F.3d 1373, 1375 (11th Cir.1999) (affirming dismissal where the Title VII plaintiff destroyed or lost evidence in his possession, ignored the "district court's order to explain the spoliation [of that evidence], ... intentionally misidentified a witness, ignored the court's order to release medical records, and failed to appear at a hearing for reconsideration of the court's order dismissing the case, claiming his attorney had never informed him of the hearing"). In the judgment of the Court, this case presents a clear record of delay and willful contempt, and no sanction short of dismissal will suffice to cure the harm that the Plaintiff has caused.

■ First, the Court must make a finding that sanctions less harsh than dismissal would not suffice to goad the Plaintiff back onto the discovery path that the Court and Federal Rules have cut. *See, e.g., World Thrust Films v. International Family Entertainment*, 41 F.3d 1454 (11th Cir.1995) (reversing and remanding district court's dismissal where district court did not make this finding). Such lesser sanctions "range from a simple reprimand to" sanctions just shy of "an order dismissing the action with or without prejudice." *Mingo*, 864 F.2d at 102. Here, the Plaintiff was twice reprimanded, once by Magistrate Judge Steele, "this Court and the parties must operate pursuant to the Rule 16(b) Scheduling Order ... and [t]he schedule of this action cannot and will not operate according to the Plaintiff's personal agenda," and once by myself, "the Court will strictly hold the Plaintiff to his word."

(Docs. 18 & 24). The Court promised dismissal if he did not cooperate with the court-ordered deposition: "if he does not appear for the deposition or if he does not fully cooperate in the taking of his deposition ... this action is subject to being dismissed for his failure to cooperate in discovery and for his failure to obey the Orders of this Court." (Doc. 35). Yet neither of these lesser sanctions nor the threat of dismissal fazed the Plaintiff's recalcitrance. The record makes it plain that dismissal and nothing less fits the Plaintiff's behavior.

Equally plain is the Plaintiff's record of delay and willful contempt for the rules and the Court's orders. As defense counsel aptly put it during the May 16, 2002 hearing: the record reads like a "greatest hit parade of discovery abuses." The details of this hit parade are above, but just to summarize: the Plaintiff thrice missed Court-imposed deadlines, thrice directly disobeyed other Court orders, thrice changed the agreed-upon course of discovery at the last minute causing the Defendant expense, and thrice was given an extension of deadlines by the Court. The Court has tried to "drag [the Plaintiff] kicking and screaming through discovery," even though this is not the Court's job. *Carlucci v. Piper Aircraft Corp.*, 102 F.R.D. 472, 489 (S.D.Fla.1984) *aff'd in part, rev'd in part*, 775 F.2d 1440 (11th Cir.1985). As the Court reminded the Plaintiff at the May 16 hearing, once he filed his suit, the proceedings became public business and the Court's business, and he no longer had the privilege of operating at his convenience. No amount of judicial cajoling has impressed this on him thus far, and in the Court's judgment, only dismissal can end this cycle of contempt. For this reason, this action is **due to be DISMISSED WITH PREJUDICE.**

■ Finally, the Court must confront Degussa's request for monetary sanctions against Plaintiff. Degussa asks for a grand total of $63,953.80, the complete costs of its defense. *See* (Doc. 42) (Degussa's affidavit detailing the costs of the defense). Of this total, $12,677.21 represents the amount that Degussa spent traveling to, and preparing for the Court-ordered deposition for which Plaintiff did not show up. *See* (Doc. 40) (Degussa's affidavit itemizing the deposition expenses). The Court finds that this second, smaller amount is the more appropriate measure of sanctions. Degussa had to defend the action regardless of the Plaintiff's shenanigans, and so billing the Plaintiff for Degussa's defense is too harsh a sanction. However, the deposition is different: the Court specifically ordered the Plaintiff to appear and Degussa had tried to accommodate the Plaintiff's scheduling whims several times before. Yet, even in the face of an explicit Court order, the Plaintiff gave his personal agenda priority, costing Degussa the $12,677.21 [4] it requests. *See Phipps v. Blakeney*, 8 F.3d 788, 790 (11th Cir.1993) (affirming the district court's dismissal of an action and award of sanctions in the amount of deposition costs where, among other things, the plaintiff missed a court-ordered deposition). For these reasons, the Court finds that the Defendant, Degussa–Huls Corporation is **due to be**

---

4. As to the Plaintiff's contention that he should not be required to pay for a videographer, as it was unnecessary to videotape the deposition, the Court refuses to reduce the amount of the sanctions by the amount paid to the videographer. At the May 16, 2002 hearing, the Defendant's counsel told the Court that, at the time she and Plaintiff's counsel scheduled the Plaintiff's deposition, she told Plaintiff's counsel that the deposition would be videotaped. He did not object then or at any time before the scheduled deposition time. Plaintiff's counsel did not dispute her representations to the Court.