**UNITED STATES of America,
Plaintiff,**

v.

**20660 LEE ROAD, CA., Defendant.**

No. 4:06–cv–304.

United States District Court,
S.D. Iowa,
Central Division.

July 17, 2007.

Craig P. Gaumer, U.S. Attorney's Office, Des Moines, IA, for Plaintiff.

Kenneth Alan Reed, Santa Ana, CA, for Defendant.

## ORDER

PRATT, Chief Judge.

On July 3, 2006, Plaintiff, United States of America, filed a Verified Complaint in Rem ("Complaint") against the Defendant property, 20660 Lee Road, Perris, California. Clerk's No. 1. In the Complaint, Plaintiff seeks forfeiture and condemnation of the Defendant property, pursuant to 21 U.S.C. § 881(a)(7). Specifically, Plaintiff claims that the Defendant property is subject to forfeiture because it was used to facilitate a conspiracy to distribute controlled substances, in violation of the Controlled Substances Act, 21 U.S.C. §§ 841, 846. A Notice of Lis Pendens was filed with the Clerk of Court of the County where the Defendant property is located, Riverside County, California, and copies of the Notice of Lis Pendens were mailed to the Riverside County Recorder and the Riverside County Treasurer. Clerk's No. 2. The Court entered a protective order on August 14, 2006, prohibiting any owner or occupant of the Defendant property from selling, transferring, or otherwise encumbering the property, and from taking any actions that would diminish the value of the property. Clerk's No. 4. The purported owner of the Defendant property, Sagrario Valdez ("Valdez"), was served with the Complaint by the United States Marshal Service on September 7, 2006. Clerk's No. 5. The Verified Complaint in Rem and Protective Order were posted on the Defendant property on October 19, 2006. Clerk's No. 6.

On October 20, 2006, Plaintiff's counsel, Craig Peyton Gaumer ("Gaumer") sent a letter, both by e-mail and by United States Mail, to Mr. Kenneth Reed ("Reed"), counsel for Valdez in the underlying criminal case. The letter articulated that Valdez was personally served with the Complaint, that over thirty days had elapsed since Valdez was served, and that Valdez had not filed a verified claim in response to the Complaint. The letter invited Mr. Reed to file a claim on Valdez's behalf no later than November 1, 2006 to avoid Plaintiff seeking a default judgment. *See* Clerk's No. 9. Mr. Reed responded to the communication by stating that he would be filing a claim for Valdez, but merely needed to obtain Valdez's signature on the claim. Mr. Gaumer responded to Mr. Reed by giving him until December 1, 2006 to file a proper claim and answer.

On December 1, 2006, Mr. Reed filed Valdez's Answer to the Complaint, admitting that the Defendant property is properly identified, but denying that the property is subject to forfeiture. Clerk's No. 7. The document was not signed by Valdez. Mr. Gaumer states that he attempted to contact Mr. Reed by telephone in February 2007, but received no return phone call. Accordingly, on March 12, 2007, Mr. Gaumer e-mailed and mailed Mr. Reed again, and informed him that a proper claim and answer had not been filed in the case. Specifically, Mr. Gaumer pointed out that no "Verified Claim" had been filed, as required by the Supplemental

Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, and that the "Verified Claim" must be filed prior to filing an Answer to the Verified Complaint. Mr. Gaumer gave Mr. Reed until April 1, 2007 to file the corrected documents.

On March 28, 2007, Mr. Reed filed a document entitled "Verified Answer" to the Complaint. Clerk's No. 8. The document is identical to the "Answer" filed on December 1, 2006, and was still not signed by Valdez. Plaintiff filed the present motion on May 17, 2007, seeking Default Judgment against Valdez for failing to appropriately and adequately respond to the Complaint. On June 4, 2007, Mr. Reed filed, on behalf of Valdez, two documents: a "Statement of Claim" (Clerk's No. 11) and an "Amended Answer" to the Complaint (Clerk's No. 10). Both documents contained signatures. On the same date, Mr. Reed filed a document entitled "Opposition to Motion for Default Judgment." Clerk's No. 12. Therein, discussion is made regarding "motion[s] to set aside defaults"[1] and how counsel, through "inadvertence," neglected to update certain dates on the documents that were filed: "While it is clear that a reading of the [filed] documents would create a certain amount of confusion, it is equally clear that [they] evidence on Ms. Valdez['s] part to answer the complaint of the government regarding her property in Riverside California."[2] Opp. Br. at 4. Attached to the Opposition Brief is a Declaration of Mr. Reed, indicating that he traveled to Iowa on March 28, 2007, to obtain Ms. Valdez's signature on the Answer to the Verified Complaint in Rem.

Federal Rule of Civil Procedure 55(a) provides: "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default." Supplemental Rule G(5) for Admiralty or Maritime Claims and Asset Forfeiture Actions provides:

(i) A person who asserts an interest in the defendant property may contest the forfeiture by filing a claim in the court where the action is pending. The claim must:

(A) identify the specific property claimed;

(B) identify the claimant and state the claimant's interest in the property;

(C) be signed by the claimant under penalty of perjury; and

(D) be served on the government attorney designated under Rule G(4)(a)(ii)(C) or (b)(ii)(D).

(ii) Unless the court for good cause sets a different time, the claim must be filed:

(A) by the time stated in a direct notice sent under Rule G(4)(b) [stating that direct notice must provide a deadline for filing a claim, "at least 35 days after the notice is sent"].

Further, Supplemental Rule G(5)(b) provides that a "claimant must serve and file an answer to the complaint or a motion under Rule 12 within 20 days *after* filing

---

1. Notably, no default has yet been entered in this case, so discussion of law related to setting aside a default is irrelevant.

2. Mr. Reed's discussion of dates is extremely confusing. The document filed on March 28, 2007 (the unsigned "Verified Answer to Complaint" which was identical in all respects to the "Answer to Complaint" filed December 1, 2006) was dated December 1, 2006. The "Answer to Verified Complaint in Rem" filed on June 4, 2007, was also dated December 1, 2006, though the Verification signed by Valdez was dated March 28, 2007. The "Statement of Claim" filed on June 4, 2007, was dated October 30, 2006.

the claim." Supp. R. Adm. or Mari. Cls. Rule G(5)(b) (emphasis added).

While there is no case law in the Eighth Circuit dealing directly with Supplemental Rule G(5)(b), the Court of Appeals has more than once addressed a substantially similar provision in Supplemental Rule C(6)(a), which provides that a person asserting an interest in certain property must file a verified statement of right or interest. The Court of Appeals has "repeatedly held that district courts may require claimants in forfeiture proceedings to comply strictly with Rule C(6) in presenting their claims to the court." *United States of Am. v. Three Parcels of Real Property*, 43 F.3d 388, 391 (8th Cir.1994). In *United States of America v. Three Parcels of Real Property*, the appellate court reviewed the action of the district court in striking certain claims filed pro se pursuant to Supplemental Rule C(6). *Id.* at 391–92. Finding that the notices of claim did not specifically identify who had what interest in the subject property, and that the claims were not verified as required by Supplemental Rule C(6), the appellate court affirmed the district court's decision. *Id.* at 392. The Court of Appeals noted that the claimants had the opportunity to amend their notices to comply with Rule C(6) but failed to do so, and that the claimants' pro se status was insufficient to excuse their procedural default. *Id.*

Likewise, in *United States v. Ford 250 Pickup 1990*, the Eighth Circuit affirmed a district court's striking of a claim to ownership of a vehicle and its grant of default judgment in favor of the government. 980 F.2d 1242, 1243 (8th Cir.1992). In *Ford 250*, a claimant timely filed a certified claim, but failed to serve the claim on the United States Attorney and did not file a separate answer to the Verified Complaint. *Id.* at 1244. The Court of Appeals rejected the claimant's argument that the timely filed claim was detailed enough to serve as an answer to the complaint, stating that

Supplemental Rule C(6)'s "requirement that both a claim and an answer be filed is 'plain and unambiguous'" and that "this court has held that an answer, standing alone, is insufficient to satisfy Rule C(6)." *Id.* at 1245 (quoting *United States v. United States Currency Totalling $3,817.49*, 826 F.2d 785, 787 (8th Cir.1987) and citing *United States v. Beechcraft Queen Airplane*, 789 F.2d 627, 630 (8th Cir.1986)). More importantly, the Court of Appeals held the district court did not err in refusing to permit the claimant to file a late answer in compliance with the rule. *Id.* "In order to avoid the strict requirements of Rule C(6), the party attempting the untimely filing must show excusable neglect or a meritorious defense." *Id.* (citing *Beechcraft*, 789 F.2d at 630).

■ The United States Supreme Court has articulated four factors to be considered in determining whether a stated reason for failing to comply with a procedural deadline constitutes "excusable neglect":

> [T]he determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include ... the danger of prejudice to the [opposing party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 395, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). The Eighth Circuit has further delineated the boundaries of excusable neglect, finding that it is "generally 'understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence.'" *Noah v. Bond Cold Storage*, 408 F.3d 1043, 1045 (8th Cir.2005) (quoting *Union Pac. R.R. v. Progress Rail Servs. Corp.*, 256 F.3d 781, 782 (8th Cir.

2001)). "To be excusable, however, the neglect must be accompanied by a showing of good faith and some reasonable basis for not complying with the rules." *Id.* (citing *Ivy v. Kimbrough,* 115 F.3d 550, 552 (8th Cir.1997)). Excusable neglect does not include "ignorance or carelessness on the part of an attorney," nor does excusable neglect encompass "the failure to follow the clear dictates of a court rule . . . ." *Id.* (citing *Hunt v. City of Minneapolis,* 203 F.3d 524, 528 n. 3 (8th Cir. 2000); *Ceridian Corp. v. SCSC Corp.,* 212 F.3d 398, 404 (8th Cir.2000)).

■ In the present case, the Court finds that the first *Pioneer* factor does not weigh substantially in favor of or against Valdez. The Government contends that there is a danger of some prejudice to it because it "is in a posture to conclude this forfeiture case, and should not have to reopen the record, and spend time and resources litigating a matter against a party who is so cavalier about following proper procedure." Pl.'s Reply at 3. While this may be true, the Court is mindful that entry of a default judgment in this case would be substantially prejudicial to Valdez, as she will forever lose her opportunity to contest the forfeiture of the subject property.

Regarding the second *Pioneer* factor, the length of the delay and its potential impact on judicial proceedings, the Court finds this factor weighs against Valdez. Valdez was personally served with the Verified Complaint on September 7, 2006. Nearly two weeks after a claim was due to be filed, on October 20, Plaintiff sent correspondence to Valdez's counsel stating that it would not seek a default judgment if a proper claim was filed by November 1, 2006. Upon further communication, the deadline was further extended to December 1, 2006. Rather than file a proper claim, Valdez's counsel filed on her behalf an unsigned Answer to the Verified Complaint, but did not file a proper claim in accordance with the Supplemental Rules. Plaintiff contacted Valdez's counsel once in February and again in March regarding the deficient filing and again provided the opportunity for Valdez to make a proper claim by April 1, 2007. Rather than file a claim, despite having been told by the Plaintiff of the appropriate procedure for filing a claim and an answer, Valdez's counsel filed the exact same unsigned Answer on March 28, 2007. *See* Clerk's No. 9, Gov't Ex. B (letter dated March 12, 2007 from Mr. Gaumer to Mr. Reed stating: "I would like to make you aware that the Answer was filed unsigned and should have been filed after your Verified Claim as required by Rule G(5) of the Supp. R. for Adm. M. and Forf. Claims."). Indeed, it was not until June 4, 2007, *after* the Government requested a default judgment and nearly eight months after a Verified Claim was due in the first instance, that Mr. Reed filed an actual Verified Claim pursuant to the Supplemental Rules.

Closely related to the extensive delay in filing a proper claim, is the third *Pioneer* factor, which requires the Court to examine the reason for the delay, including whether it was within the reasonable control of the movant. This factor also weighs against Valdez. The only explanation given by Valdez and her counsel as to why a proper claim and answer were not filed until June 2007, is counsel's statement that he inadvertently neglected to update the dates on various filings. No mention is made as to why a proper *claim* was never filed, nor is any mention made as to why counsel repeatedly filed unsigned documents. Essentially, no explanation whatsoever is given that could constitute a justification for the utter failure to follow the procedural rules in this matter, despite Mr. Reed having been told on more than one occasion of the applicable Supplemental Rule and its requirements, and having been provided numerous opportunities to

correct the matter. Indeed, the Court finds it disingenuous of counsel to assert that he had any intent to timely file a proper claim given that Mr. Reed told Mr. Gaumer in October 2006 that he would be filing a claim for Valdez after he obtained her signature. Mr. Gaumer told Mr. Reed to file the Claim no later than December 1, 2006, yet according to Mr. Reed's affidavit, it does not appear that he made any effort to obtain Valdez's signature until he traveled to Iowa in late March 2007, nearly four months later. This complete disregard for the procedural rules also tips the fourth *Pioneer* factor against Valdez. Nothing on the record before the Court indicates that Valdez, despite her apparent intent to make a claim on the subject property, acted in "good faith" in attempting to file a Claim. Indeed, Mr. Reed was repeatedly told of the applicable rules and the appropriate procedure, yet ignored that information and filed documents that were wholly insufficient.

The *Pioneer* Court did not find each of the four factors to be of equal weight in the excusable neglect determination. The third factor, the reason for the delay, weighs most heavily in the equation. *See Pioneer*, 507 U.S. at 398–99, 113 S.Ct. 1489 (indicating that where the third factor weighs in favor of a finding of excusable neglect, the first, second and fourth factors must also weigh in the claimant's favor to find excusable neglect, but where the third factor weighs against the claimant, the court may still find excusable neglect if the facts and circumstances require, and if the first, second, and fourth factors weight in favor of the claimant); *Lowry v. McDonnell Douglas Corp.*, 211 F.3d 457, 463 (8th Cir.2000) ("[T]he excuse given for the late filing must have the greatest import."). Where then, as here, the third factor, as well as the second and fourth factors weigh against a finding of excusable neglect, the Court is hard pressed to excuse Valdez's noncompliance with the Supplemental Rules, given the strict compliance standard set by the Eighth Circuit.

Excusable neglect at its core requires a showing of good faith and a reasonable basis for the failure to comply with the rules. Neither has been demonstrated in the present case. Indeed, the failure of counsel to follow well-established rules amounts to nothing more than "garden-variety attorney inattention" and not "excusable neglect." [3] *See Lowry*, 211 F.3d at 464. While the entry of default judgment is not favored by the law and "should be a 'rare judicial act' " the facts in the present case warrant the entry of default judgment in favor of the Plaintiff. *Comiskey v. JFTJ Corp.*, 989 F.2d 1007, 1009 (8th Cir. 1993) (quoting *Edgar v. Slaughter*, 548 F.2d 770, 773 (8th Cir.1977)). Accordingly, Plaintiff's Motion for Default Judgment (Clerk's No. 9) is GRANTED.

IT IS SO ORDERED.

---

3. While Mr. Reed appears to hold the brunt of responsibility for the failure of Valdez's claim in this case, the Supreme Court has held that clients must be held accountable for the acts and omissions of their attorneys. *Pioneer*, 507 U.S. at 396, 113 S.Ct. 1489 (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)). Valdez "voluntarily chose this attorney as [her] representative in the action, and [she] cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of [her] lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.' " *Id.* at 397, 113 S.Ct. 1489 (quoting *Link*, 370 U.S. at 633–34, 82 S.Ct. 1386 and *Smith v. Ayer*, 101 U.S. 320, 326, 11 Otto 320, 25 L.Ed. 955 (1880)).